## JOSEPH COURAND v. JOHN VOLLMER.

The 13th section of the IVth article of the constitution of the republic reads
as follows: "The congress shall, as early as practicable, introduce, by stat-
ute, the common law of England, with such modifications as our circum-
stances, in their judgment, may require; and in all criminal cases the
common law shall be the rule of decision." (Paschal's Dig., Art. IV, sec.
13, Note 138, p. 34.)   And the 1st section of the act of 30th January, 1840,
reads as follows: "The common law of England (so far as it is not incon-
sistent with the constitution or the acts of congress now in force) shall,
together with such acts, be the rule of decision in this republic, and shall
continue in full force until altered or repealed by congress." (Paschal's
Dig., Art. 978, Note 418.)   The whole system of the common law of Eng-
land was not adopted by this act, but simply that portion of it which re-
lated to the rule of decision.   (Foster v. Champlin, 29 Tex., 22.)

Before the revolution, on the 2d of March, 1836, the Mexican civil law and
the decrees of Mexico and Coahuila and Texas, were the rule of action, and
these laws remained in force until repealed.

The common-law act substituted the common-law of England in place of the
civil law as a rule of decision, and for this only; not as a rule of practice,
except when something was to be decided.

No English statute was ever enforced in this state except such as have been
re-enacted.

The English common law required a bond to be under seal, but this had no
application to a bond in Texas.

The district court act of 1846 requires an appeal bond, but to effect the same
thing by a writ of error it requires an obligation, while to obtain a dis-
tress warrant an instrument must be signed; the form in the attachment
act uses a seal or scroll. (Paschal's Dig., Arts. 163, 1491, 1495, 5034; Read
v. Levy, 30 Tex., 848.)

From the fact that the act about conveyances required that a deed should be
under seal, it is to be inferred that the same solemnity was not required for
a bond. (Paschal's Dig., Art. 997.)

The act of 1858, concerning seals, reads as follows: "No scroll or private seal
shall be necessary to the validity of any contract, bond, or conveyance,
whether respecting real or personal property, except such as are made by

corporations; nor shall the addition or omission of a scroll or seal in any way affect the force and effect of the same; and every contract in writing hereafter made shall be held to impart a consideration as fully and in the same manner as sealed instruments have heretofore done." (Paschal's Dig., Art. 5087, Note 1114.) This act repeals the common-law act, as to contracts concerning property, and in its spirit extends to all money obligations, and was intended to dispense with all sealed instruments.

The words whether "real or personal property" apply to conveyances only.

The act regulating the writ of *certiorari* requires a bond, but it is not necessary that the bond should contain a seal. (Paschal's Dig., Art. 468, Note 331.)

Lindsay, dissenting, held that the scroll or seal was only dispensed with in private instruments, not in judicial proceedings.

Appeal from Medina. The case was tried before Hon. George H. Noonan, one of the district judges. The facts are sufficiently stated in the opinion of the court.

The only question was as to the necessity of a bond for *certiorari* being under the statute, which uses the word "bond." (Paschal's Dig., Art. 468, Note 331.) The chief justice followed the views in Foster v. Champlin, 29 Tex., 22, and Russell v. McCampbell, 29 Tex., 37. Mr. Justice Lindsay followed Read v. Levy, 30 Tex., 738. The question will doubtless be settled by legislation.

No briefs have been furnished to the *Reporter*.

Morrill, C. J.—This suit was brought before a justice's court, and transferred to the district court by *certiorari*.

The appellee moved in the district court to dismiss the cause, because the obligors in the bond for the *certiorari* did not add a scroll or seal to their names, and therefore the bond was defective.

The motion was sustained by the district court, and the decision of the judge in this respect is the error assigned in this court.

The constitution of the Republic of Texas (Art. IV, sec. 13) provides that "the congress shall, as early as practicable, introduce by statute the common law of England,

with such modifications as our circumstances in their judgment may require; and in all criminal cases the common law shall be the rule of decision." [Paschal's Dig., p. 34, sec. 13, Note 138.] Accordingly, on the 20th January, 1840, the congress passed the following act:

"The common law of England (so far as it is not inconsistent with the constitution or the acts of congress now in force) shall be the rule of decision in this republic, and shall continue in force until altered or repealed by congress." [Paschal's Dig., Art. 978, Note 418.]

It is perfectly apparent that the whole system of the common law of England was not adopted by this act, but simply that portion of it which related to "the rule of decision." The substratum of the law of the parent country was the civil law. This, together with the statutes in force in Mexico and in Coahuila and Texas on the 2d March, 1836, were the laws in force when Texas became a separate government, and remained such until repealed. The constitution of 1836 and the acts of three different congresses had already furnished a collection of laws sufficient for a superstructure, but the basis or foundation of the judicial system was the civil law, and it was this which formed the rule of decision up to January, 1840.

This act, therefore, substituted the common law of England in place of the civil law as "the rule of decision," and for this only. It did not adopt the common law of England as a rule of practice, or to be used except when something was to be decided. This, of course, contemplated judicial decisions, and was intended for the direction of the judiciary to resort to the unwritten law of England in those cases where the statutes are silent. Unlike most of the other states of the United States, the State of Texas, or the territory of which it is composed, never was under the jurisdiction of England, and therefore none of the English statutes ever were in force in this state except as they have been specially enacted. The congress of the Republic of

Texas and the legislature of the State of Texas have adopted as laws a portion of an act of 13 and 27 Elizabeth and one section of an act of 29 Charles II, and the whole unwritten or ante-statute law of England, so far as it forms or can form, in the absence of statute law, "a rule of decision." And it would be just as improper to say that, because the legislature enacted the 4th section of the statute of frauds, the whole act was adopted, as to say that the common law of England was adopted for any and all purposes, because it was adopted as a "rule of decision."

We have thus far proceeded as if the act introduced the common law as a rule of decision without exception. But the act itself expressly excepts even this when it is inconsistent with the constitution or laws in force. When, therefore, such a state of things exists by the laws in force as would cause an inconsistency, or a want of necessity to resort to the common law, it is not in force.

By the common law of England, upon the death of a person, his personal property all descended to his executor and his real estate to his heirs. (Kent, 420; 3 Black, 430.) And unless the ancestor, in entering into an obligation to pay a certain sum of money, made a sealed instrument, there called a bond, by which he bound his heirs, &c., the heirs could inherit the real estate. unincumbered with the obligation. In this state it is not so. An instrument in writing, or even a parol engagement, made by an ancestor to pay a certain sum of money, if it could be collected of the party primarily liable, would make all his real and personal estate liable. It is therefore inconsistent with the laws that have been in force ever since Texas has existed as a state to require a sealed instrument here as in England.

The first act of the congress of Texas, passed in December, 1836, page 203 of the Acts, provided that any party may appeal from a judgment of the district court to the supreme court on entering into bonds, with security, &c. In construing and defining the word "bond" in that act,

no reference could be had to the common law of England, which required a seal, any more than to the ancient Jewish law, which required a man to pluck off "his shoe and [give] gave it to his neighbor, and this was testimony in Israel." (Ruth, IV, 7.)

A bond is what binds. Therefore, any instrument in writing that legally binds a party to do a certain thing may be called a bond. A bond by the acts did not require a seal; and as it would be inconsistent with the act then in force to say a seal is required by the act of 1840, therefore this common-law act does not apply to bonds.

The legislature has used the words "bond," "obligation," and "instrument in writing," as convertible terms, and as meaning the same thing.

For instance, Paschal's Digest, article 1491, requires that an appeal bond shall be given to remove a cause from the district court to this court; but article 1495, in specifying the requirements of a writ of error to effect the same thing, makes it the duty of the plaintiff in error to execute his obligation, &c.; and again, article 5034, in stating the preliminaries for a distress warrant, requires the party, with one good security, to sign an instrument as follows, &c.; while in the case of attachment (article 163) the statute, in addition to requiring a bond, gives a form that may be used, in which seals or scrolls are expressly mentioned.

The act concerning conveyances, (Paschal's Dig., Art. 997,) was passed by the same congress that passed the common-law act and fifteen days thereafter. If there is any other instrument mentioned in the statutes of the state expressly requiring a scroll or seal—that is, a seal that can be made by a pen—it is not known to this member of the court.

It is true that the attachment act gives a form for a bond, wherein the words "scroll for seal" are used, but it is not mandatory that this form shall be used, but simply says it may be used. But to return to the act concerning conveyances: From the fact that the legislative department, after

xxxi—26

passing the common-law act, conceived it their duty to declare that real estate could not be conveyed except by a deed or writing, sealed and delivered, we are authorized to infer that they did not suppose the common-law act could have reference to a deed. But a deed is not surpassed by a bond, either in antiquity or in its requisites of a seal for its validity, by the common law of England.

It is also to be remembered that the legislature of 1858, (Paschal's Dig., Art. 5087,) has expressly repealed the act of 1840, and all other acts requiring "a scroll or private seal for the validity of any contract, bond, or conveyance, whether respecting real or personal property." Agreeably to the construction of this act, as understood by some, there would seem to be just as much propriety in abolishing seals or scrolls from bonds for the payment of money as for conveyance of land; and the only reason that can be assigned why it was done in the one case and not in the other is, that the legislature did not conceive that a seal had ever been required except in the conveyance of estate, and it would be an act of folly to repeal a statute that never had an existence. This is believed to be the true construction of this act by some of the court. But, as there are other and different views on this subject, we will give this act a more extended notice.

The act is contained in article 5087 of the Digest, and is entitled "An act to dispense with the use of scrolls or seals in certain cases," viz: "No scroll or private seal shall be necessary to the validity of any contract, bond, or conveyance, whether respecting real or personal property, except such as are made by corporations, nor shall the addition or omission of a scroll or seal in any way affect the force and effect of the same; and every contract in writing hereafter made shall be held to impart a consideration as fully and in the same manner as sealed instruments have heretofore done."

Had this act been "no scroll or private seal shall be

necessary to the validity of any contract, bond, or convey-
ance," and closed with the word "conveyance," the mean-
ing would have been evident that it was the intention of
the act to abolish seals in the use of each of these instru-
ments; but as the statute continues "whether respecting
real or personal property," the question arises whether this
clause has reference to the last word, "conveyance," or is
to be applied to "contract" and "bond." The first im-
pression on reading this act is that the phrase applies as
well to "contract" and "bond" as to "conveyance," but
when we take into consideration the remainder of the act,
viz, "every contract in writing hereafter made shall be
held to impart a consideration as fully and in the same
manner as sealed instruments have heretofore done," we
must infer that the legislature contemplated that sealed
instruments would not be thereafter used, that it was not
necessary that any contract should be sealed, and that
seals on all instruments were dispensed with. Some of the
court believe that it was intended by this act to dispense
with scrolls or private seals in all cases, except when made
by corporations; that the phrase "whether respecting real
or personal property" applies to conveyances only, and
the statute would not be changed in meaning if it read,
"No scroll or private seal shall be necessary to the validity
of any conveyance, whether respecting real or personal
property, contract, or bond, except such as are made by
corporations, nor shall the addition or omission of a scroll
or seal in any way affect the force and effect of the same,
and every contract hereafter made shall be held to impart
a consideration as fully and in the same manner as sealed
instruments have heretofore done."

So far as affects the case before the court the result is
the same, whether we believe that the scrolls were never
adopted by statute for any contract except conveyances, or,
if adopted, that they have been dispensed with by the act
of 1858.

We now propose to examine the bond given in this case with a view to its validity. It is as follows:

"THE STATE OF TEXAS, }
"*County of Medina.* }

"Know all men by these presents, that we, Joseph Courand, as principal, and Joseph Schorp and August Geyer, as sureties, are held and firmly bound unto John Vollmer in the sum of $50, for the payment of which, well and truly to be made, we hereby bind ourselves, our heirs, executors, and administrators, jointly, severally, and firmly, by these presents. The condition of this obligation is such, that whereas, on the 24th day of November, 1866, before V. Haass, a justice of the peace in and for the county of Medina, aforesaid, precinct No. 1, the said John Vollmer recovered a judgment against the said Joseph Courand for the sum of $22 in specie, and the said Joseph Courand has obtained from the Hon. G. H. Noonan, judge of the eighteenth judicial district, a writ of *certiorari* to said justice to remove said cause to the district court in and for the county of Medina, aforesaid: Now, if the said Joseph Courand shall prosecute his said suit to effect, or shall pay and satisfy the judgment or decree that may be made or rendered by said district court therein, then this obligation to be null and void, otherwise to be in full force and effect.

"Witness our hands this 20th day of December, 1866.

"JOSEPH COURAND.
"JOSEPH SCHORP.
"AUGUST GEYER.

"Approved December 24, 1868.
"V. HAASS, *Clerk District Court Medina County.*"

The statute provides that in obtaining a *certiorari* the party shall give a bond, with two or more sufficient sureties, payable to the adverse party, for a sum equal at least to double the value of the amount in controversy, conditioned in the same manner as appeal to the district court, and

which shall be approved by the clerk. [Paschal's Dig., Art. 468, Note 331.]

The condition of an appeal bond from the justice to the district court (Art. 1205) is, that the party appealing shall prosecute his appeal to effect, or shall pay and satisfy the judgment or decree that may be made or rendered by the district court against the obligors in the bond.

Divested of all the useless verbiage of calling upon all men to know the transaction, as well as what is said about the heirs, executors, and administrators of the obligors, the bond contains two sureties, is payable to the adverse party, and for a sum double the amount in controversy, and conditioned to satisfy the judgment or decree that may be made or rendered by the district court, and is approved by the clerk. By this instrument the parties were each and all bound to pay agreeably to the tenor and effect thereof, and the instrument by which they were bound was a bond; the bond was apparently valid, and the court erred in deciding otherwise.

REVERSED AND REMANDED.

LINDSAY, J., dissenting.—I cannot concur in the opinion of the court delivered in this case. The act of 1858 only dispenses "with the use of a scroll or seal in certain cases." My opinion is that it was only intended to dispense with such a symbol in private contracts, but not in official or judicial instruments.