Honorable John L. HILL, Attorney General of Texas, Appellant,

v.

LOWER COLORADO RIVER AUTHORITY et al., Appellees.

No. 12811.

Court of Civil Appeals of Texas, Austin.

July 12, 1978.

Rehearing Denied July 26, 1978.

**474**

John L. Hill, Atty. Gen., David M. Kendall, Jr., First Asst. Atty. Gen., Douglas G. Caroom, Asst. Atty. Gen., Austin, for appellant.

Fred B. Werkenthin, Dennis R. Reese, Small, Craig & Werkenthin, Austin, for Lower Colorado River Authority.

James K. Nance, Melbert Schwarz, Jr., Rufus S. Scott, Baker & Botts, Houston, for Houston Lighting & Power Co.

O'QUINN, Justice.

John L. Hill brought this lawsuit in September of 1977, "individually and as Attorney General of the State of Texas," against the Texas Water Rights Commission, the Lower Colorado River Authority, and against Houston Lighting and Power Company as Project Manager for the South Texas Nuclear Project.

Hill alleged that suit was brought " . . . to seek review of an order by the Texas Water Rights Commission granting a contractual permit" to Houston Lighting and Power Company, based upon a contract between Houston Lighting, as Project Manager for the South Texas Nuclear Project, and the Lower Colorado River Authority. The petition further alleged that suit was brought "pursuant to Section 6.101, Texas Water Code, and Article 6252–13a, Section 19 (The Administrative Procedure and Texas Register Act)."

Twenty-six days after filing suit, and before answer was made by the Texas Water Rights Commission and other defendants, Hill filed an amended petition on September 28 naming as defendant, in lieu of the Water Rights Commission, the Texas Department of Water Resources which had been created by the Legislature, effective September 1, 1977, with contemporaneous abolishment of the Texas Water Rights Commission previously sued.

The Department of Water Resources answered *pro se* through Charles Nemir, its acting executive director, setting up a plea to the jurisdiction, special exceptions, and a general denial. The Lower Colorado River Authority and Houston Lighting and Power also answered presenting similar defenses, though more extensively alleged, and specific pleas in abatement.

The Attorney General pleaded, as further authority to bring this action in his capacity as the "duly elected Attorney General of Texas," that "He brings this action pursu-

ant to his constitutional, statutory, and common law powers individually and on behalf of the people of the State of Texas and its citizens, particularly those in the service area of the South Texas Nuclear Project, who are persons directly affected by the action complained of . . . " by this suit.

Defendants below joined issue on this claimed authority by the Attorney General and urged their pleas in abatement on the ground that in bringing suit against the Department of Water Resources, to challenge validity of the order made by the Water Rights Commission, the Attorney General in effect abandoned his constitutional and statutory duty to represent the Department of Water Resources in any litigation in which it may be involved, and that such duty to the State and its agencies denied the Attorney General standing in court, individually and as a private citizen, to bring suit against the State agency.

The defendants also filed and urged pleas to the jurisdiction on the ground that the Attorney General failed to sue the proper State agency within the period allowed by statute following the order entered by the Water Rights Commission. The basis for such claim is that suit was filed originally, on September 2, 1977, against an agency (the Texas Water Rights Commission) which no longer existed, by virtue of revision by the Legislature of Title 2 of the Water Code, effective on September 1, 1977. The Attorney General failed to amend and name the proper agency and the correct agent for service until September 28, long after expiration of the time allowed by statute within which to bring suit.

The district court, Judge Ruel C. Walker presiding, overruled the pleas to the jurisdiction, but sustained the pleas in abatement and by order entered February 7, 1978, dismissed the Attorney General's suit against Texas Department of Water Resources and the other defendants.

The Attorney General has appealed and brings the single point of error that the pleas in abatement were improperly sustained by the trial court " . . . because the Attorney General of Texas has authority to initiate this action on behalf of the people of the State of Texas to obtain judicial review of the action of the Texas Water Rights Commission."

We will overrule the point of error and will affirm judgment of the trial court.

The proceedings before the Texas Water Rights Commission, which ultimately reached adoption of the order of June 20, 1977, forming the basis for this litigation, began in January of 1974 with the filing by Houston Lighting and Power of an application for a permit to appropriate public waters of the State from the Colorado River and to construct cooling reservoirs in Matagorda County at the site of an electric generating plant, to be operated by steam generated from nuclear fuel. In filing the application Houston Lighting acted for itself and for electric systems owned by the City of San Antonio, Central Power and Light Company, and the City of Austin. The four electric systems, joined together as tenants in common, would collectively supply an area of south Texas constituting about one-third of the state and serve an estimated 5,000,000 users.

In view of prior water rights held by the Lower Colorado River Authority and to insure "a back-up supply" of water from the Authority's reservoirs on the Colorado River, Houston Lighting negotiated a contract in the summer of 1974 with the Authority, after the Water Rights Commission had requested the parties to complete a formal contract before hearings on the original application were continued or completed. Subsequently, in January of 1976, Houston Lighting returned to the Commission seeking, under its application, a contractual permit for the water pumped for the project, at which time the Commission expressed concern that the Lower Colorado River Authority was not obligated under the contract with Houston Lighting to supply water stored in the Authority's upstream reservoirs. Again the parties negotiated and reached further agreement which later met with approval of the Commission. In addition, the Authority voluntarily agreed

to abandon its rights to 102,000 acre-feet of water, previously appropriated to the Authority under a permit which authorized impoundment of the water upstream of the project site and the use of such water.

In January of 1977, after the Commission, Houston Lighting, and the Lower Colorado River Authority had agreed upon settlement of the complex issues of this proceeding, the Attorney General made appearance before the Commission and interposed his opposition to the prospective action of the Commission to approve the application as finally reshaped by the parties under guidance of the Commission. Specifically, the Attorney General objected to grant of a contractual permit, and did not oppose the application of Houston Lighting in its initial form. The Commission nevertheless granted the application for a contractual permit based on the amended contract between Houston Lighting and the Lower Colorado River Authority. Concurrently with this action by the Commission, a transfer document, previously authorized and executed on behalf of the several co-owners in the project, was delivered to the Authority. This action transferred to the Authority the project's interest in the 102,000 acre-feet appropriation acquired under the Houston Lighting permit just granted by the Commission, along with temporary appropriation of 500 acre-feet for use during construction of the plant.

The Attorney General filed motion for rehearing on grant of the contractual permit, although did not challenge the application as initially filed, and at the same time filed suit against the Commission in district court. When the Commission granted the motion for rehearing, the suit was dismissed at behest of the Attorney General.

Thereafter, upon hearing evidence on rehearing, the Commission for the second time adopted the order, entered June 20, 1977, which is involved in this cause.

The order of the Texas Water Rights Commission, which the Attorney General seeks to challenge, approved the transfer by Houston Lighting to the Authority of an appropriative permit previously granted to Houston Lighting by the Commission, and approved also the contractual arrangement under which Houston Lighting agreed to purchase water from the Authority. Thus it is clear that water proposed to be sold to Houston Lighting for the project is covered by a permit, and the only issue on the merits would be whether the action of the Commission is supported by substantial evidence and the Commission did not abuse its discretion in approving the transaction between Houston Lighting and the Authority.

The issue on this appeal is whether the Attorney General under the record has standing to raise the question of substantial evidence and abuse of discretion by the Commission.

The answer to that question must lie in the power granted the attorney general of this state by the Constitution of Texas and the State's statutes enacted by the Legislature pursuant to constitutional authority. The Attorney General insists that, in addition, under common law the attorney general of this state has the right to "represent the people of the state" and has authority to act as the "lawfully constituted guardian of the public interest." The Attorney General argues that ". . . the existence of the Attorney General's common law authority is undeniable. If he lacked such authority, much of the state government would grind to a halt."

The duties of the attorney general of this state as prescribed by the Constitution are:

"The Attorney General . . . shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party, and shall especially inquire into the charter rights of all private corporations, and from time to time, in the name of the State, take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power or demanding or collecting any species of taxes, tolls, freight or wharfage not authorized by law. He shall, whenever sufficient cause exists, seek a judicial forfeiture of such charters, unless otherwise expressly directed by law, and give legal advice in writing to the Governor

and other executive officers, when requested by them, and perform such other duties as may be required by law. . . ." (Art. IV, sec. 22, Constitution of Texas)

In conformity with the clause "and perform such other duties as may be required by law," the Legislature from time to time by law has prescribed other duties for the attorney general. For example, in addition to the mandate in the Constitution that the attorney general represent the State in the Supreme Court, the Legislature, in Article 4395, V.A.C.S., requires the attorney general to "prosecute and defend all actions in the Supreme Court *or the Court of Civil Appeals* in which the State may be interested." (Emphasis added)

The Water Code, in at least five instances, requires some action by the attorney general of the state for and in behalf of the Texas Department of Water Resources, which is described in Section 5.012 as "an administrative agency of the State":

(1) After providing for judicial review of orders, the Legislature further provided that if a plaintiff fails to secure proper service of process or does not prosecute suit within one year after its filing, the trial court shall dismiss the suit "on a motion for dismissal made by the attorney general . . ." unless good cause be shown for delay (Sec. 5.353);

(2) if a fresh water supply project is not being constructed in accordance with plan, and corrective action not taken after notice, the executive director of the Department must give notice to the attorney general, who is authorized to bring an action for injunction or *quo warranto* proceedings against directors of the water district (Sec. 12.082);

(3) if a levee is constructed without approval, the attorney general, at request of the executive director, "shall file suit in the District Court of Travis County to enjoin any violation . . ." (Sec. 16.238);

(4) at request of the executive director, the attorney general shall institute and conduct suits in the name of the State for injunctive relief or to recover civil penalties, or both, for violations of water quality requirements (Sec. 26.123(d));

(5) in similar manner the attorney general "shall institute and conduct a suit in the name of the State . . ." in violations of the Solid Waste Disposal Act (Sec. 8(c), Acts 1977, 65th Leg., ch. 870, p. 2207, 2339).

The current appropriation Act, and the two biennial appropriation Acts immediately preceding the current Act, set up provisions for limiting representation of the State to performance by the attorney general. The current General Appropriations Act, effective September 1, 1977, obligates the attorney general to represent the Department of Water Resources, and other agencies, in any civil suit filed in district court in this language:

"COURT REPRESENTATION OF THE STATE. Except as otherwise provided by the Constitution or general or special statutes, the Attorney General shall have the primary duty of representing the State of Texas in the trial of civil cases, and none of the funds appropriated in this Act may be expended by any agency of the State Government to initiate a lawsuit or defend itself against any legal action unless such agency is represented in that particular action by the Attorney General or a member of his staff. . . ." (Acts 1977, 65th Leg., ch. 872, art. 5, sec. 41, pp. 2699, 3160).

The Attorney General contends that the clause "and perform such other duties *as may be required by law*," found in section 22, Article IV, of the Constitution, "should be construed to include both statutory and common law." In this contention it is argued that as early as 1840 under the Republic of Texas the "Common Law of England" was adopted. (2 Gammel's Laws 177) The present statute is Article 1, V.A.C.S., which states:

"The common law of England, so far as it is not inconsistent with the Constitution and laws of this State, shall together with such Constitution and laws, be the rule of decision, and shall continue in force until altered or repealed by the Legislature."

The Supreme Court has construed the statute as not referring to the common law as applied in England in 1840, "but rather to the English common law as declared by the courts of the various states of the United States." *Southern Pacific Company v. Porter,* 160 Tex. 329, 331 S.W.2d 42, 45 (1960).

In further support of the contention that the attorney general of this state may exercise authority accorded under common law to prevent the state government from grinding to a halt, the Attorney General argues that "Texas courts, absent some statutory restriction, have consistently recognized the Attorney General's authority to utilize his common law powers." The cases relied upon number close to a dozen, none of which involves an attempt by an attorney general to oppose the State in an effort to substitute his views for that of a lawfully constituted State administrative agency expressly authorized to make the disputed decision.

In the earliest case cited, *State v. Delesdenier,* 7 Tex. 76 (1851), the attorney general, pursuant to joint resolution of the Legislature, brought suit in behalf of the State to recover land claimed by the State never to have been granted by the sovereign. The Supreme Court held that the State had a right "to appear in her own courts and prosecute suits in her own behalf," and that the "Executive of the State" had power "to cause legal proceedings to be instituted by the proper law officers . . . ." The Supreme Court concluded that "the joint resolution . . . conferred upon the attorney general ample authority to institute the present suit." (7 Tex. 96)

In five of the cases, upon which the Attorney General relies to show recognition by Texas courts of common law powers accorded the attorney general, the actions were against private corporations and not against the State. In none of these cases was an attorney general attacking a decision made by a State administrative agency.

■ A public charity trust, as opposed to a private trust, may be properly protected by the attorney general, such being a "function belonging to his office under the Constitution and laws of the state." *Power v. First National Bank of Corsicana,* 138 Tex. 604, 161 S.W.2d 273, 284 (1942), citing *Carroll v. City of Beaumont,* 18 S.W.2d 813, 820 (Tex.Civ.App. Beaumont 1929, writ ref'd); *Boyd v. Frost National Bank,* 145 Tex. 206, 196 S.W.2d 497, 503 (1946).

■ A private citizen, though having potential interest in penalties imposed by statute, may not maintain suit for himself and in behalf of the State, without joinder of the attorney general or other proper official. *Agey v. American Liberty Pipeline Co.,* 141 Tex. 379, 172 S.W.2d 972, 975 (1943).

■ Unless hurtful to the public, action on part of a corporation affecting private interests only may not be the subject of a suit by the attorney general, even under Article 4, section 22, of the Constitution. *State v. Farmers' Loan & Trust Co.,* 81 Tex. 530, 17 S.W. 60 (1891). A combination of fire insurance companies to fix rates and commissions, possibly not enforceable among them, and not in violation of antitrust statutes, though possibly subject to legislation as against public policy, was held not a proper subject of suit, even by an attorney general, to enjoin or forfeit a franchise. *Queen Ins. Co. v. State,* 86 Tex. 250, 24 S.W. 397, 406–7 (1893), reversing 22 S.W. 1048.

In two cases, advanced in support of the Attorney General's claim of common law power recognized by courts, an attorney general sued in behalf of the State to abate nuisances directly affecting State public lands or State public waters. *State v. Goodnight,* 70 Tex. 682, 11 S.W. 119 (1888); *Goldsmith & Powell v. State,* 159 S.W.2d 534 (Tex.Civ.App. Dallas 1942, writ ref'd).

■ Finally, the Attorney General finds inexplicable comfort in *Yett v. Cook,* 115 Tex. 205, 281 S.W. 837 (1926), in which taxpayers bringing suit were denied standing to compel the mayor and members of the city council of Austin to call an election.

The Supreme Court added: "Since the state can bring a mandamus suit similar in purpose to the one before us, it is elementary that the Attorney General has the power to institute such an action." (281 S.W. 843) It is also elementary that suits against elected officials seeking to compel performance of a ministerial duty, as in *Yett v. Cook*, are not suits against the State. *Laidlaw Bros. v. Marrs*, 114 Tex. 561, 273 S.W. 789, 792 (1925); *Morris v. Smiley*, 378 S.W.2d 149, 151 (Tex.Civ.App. Austin 1964, writ ref'd n. r. e.).

The Attorney General finds comfort in gratuitous statements and dicta appearing in the opinion of the court of civil appeals (22 S.W. 1048, 1052, in *Queen Ins. Co., supra*, and the opinions in *Yett* (281 S.W. 843), and *Agey* (172 S.W.2d 974). But the Attorney General concedes that the recognition of common law authority believed to be found in the cases just reviewed "is interrupted by three cases . . ." This reference is to cases we consider controlling in this appeal.

In *Garcia v. Laughlin*, 155 Tex. 261, 285 S.W.2d 191, 194, 195 (1955), the Supreme Court held that the attorney general did "not possess the power to institute" removal proceedings of a county official. The Court quoted from Article IV, section 22, of the Constitution defining the duties and powers of the attorney general to represent the State ". . . in all suits and pleas in the Supreme Court of the State in which the State may be a party . . . and perform such other duties as may be required by law . . ."

"The powers conferred by the Constitution upon the state officials," the Supreme Court added, "are generally held to be exclusive, and except in the manner authorized by the Constitution, these powers cannot be enlarged or restricted." In *Laughlin* the Court approved the holding in *State v. Harney*, 164 S.W.2d 55 (Tex.Civ.App. San Antonio 1942, writ ref'd w. o. m.), in which the court held that no constitutional or statutory provision "vests in the Attorney General the power, or makes it his duty, to institute actions for the removal of county officers

under" Article V, section 24, of the Constitution, and that such power was vested in the county attorney. The Supreme Court pointed out that although the application for writ of error was refused for "want of merit," that action by the Supreme Court of necessity approved the holding in *Harney.*

In the third case, which the Attorney General designates as one interrupting purported recognition by the courts of common law powers vested in the attorney general, the attorney general was held not to have powers beyond the authority "conferred upon him by the Constitution and statutes of the State." *State v. Reagan County Purchasing Co.*, 186 S.W.2d 128, 135 (Tex. Civ.App. El Paso 1944, writ ref'd w. o. m.). In that case the court adopted the following language from *Harney*: "As the powers and duties of the Attorney General are prescribed by the Constitution and Statutes, those powers must be limited to those so prescribed, and may not be enlarged by the courts." Citing also *Charles Scribner's Sons v. Marrs*, 114 Tex. 11, 262 S.W. 722 (1924).

In *Scribner's Sons* the Supreme Court on motion for rehearing made clear that although the attorney general was charged with the duty to represent the State in certain matters, in this case, a suit brought by a textbook publisher against the State Superintendent of Education, the attorney general did not have authority "to elect for the state to accept or reject a contract for text-books that is voidable," that discretion being lodged exclusively within the hands of the state board of education. (262 S.W. 729)

The Supreme Court held in 1975 ". . . that *the Constitution of Texas confers on the Attorney General* the authority to institute and maintain suit *in the name of the State* to restrain Bell [Southwestern Bell Telephone Company] from exacting unreasonably high charges for its intrastate telephone services in Texas, if such be the case." (Emphasis added) *State v. Southwestern Bell Telephone Company*, 526 S.W.2d 526 (Tex.Sup.1975). Contrary to the apparent view of the Attorney General in this appeal, the Supreme Court

found such authority solely in the Constitution (Art. IV, Sec. 22) and did not invoke the common law to sanction such power.

We find in reviewing the cases decided by the courts of Texas a consistent adherence to the principle that the attorney general derives his power and authority in office from the Constitution and the laws of the State duly enacted by the Legislature. It is further apparent that the duties and powers of the attorney general as expressed in the Constitution and in the statutes consistently ally the attorney general with the State as its counsel and advocate in its behalf, and nowhere do these grants of power arm the attorney general with authority to sue the State or any of its arms or agencies, even when the attorney general holds a view different from the decision or discretion exercised by an administrative agency. We hold that the Attorney General, acting individually and as a private citizen or in performance of the duties of his office, does not have standing to institute and maintain this suit.

By cross points on appeal, the appellees urge that the trial court erred in overruling pleas to the jurisdiction grounded on the failure of the Attorney General to comply with statutory requirements that suit be filed against the Department of Water Resources within thirty days of the final order of the Water Rights Commission.

It is true, as observed earlier, that the Attorney General brought suit on September 2, 1977, against the Water Rights Commission, after the effective date of the Legislative Act under which the former Water Rights Commission was abolished and the Department of Water Resources was made the proper agency as defendant. When the original petition was amended, on September 28, 1977, the thirty-day period allowed for bringing suit had expired.

Inasmuch as our holding that the Attorney General is without standing to file and prosecute this cause is controlling and disposes of the case, we find it unnecessary to consider the error claimed by reason of overruling the pleas to the jurisdiction.

The judgment of the trial court sustaining the pleas in abatement and dismissing the suit is in all things affirmed.

Affirmed.