# YetterColeman LLP

ACCEPTED
15-24-00120-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
2/21/2025 1:04 PM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
2/21/2025 1:04:45 PM
CHRISTOPHER A. PRINE
Clerk

February 21, 2025

*Via ECF*
Christopher A. Prine, Clerk
Fifteenth Court of Appeals
William P. Clements Building
300 W. 15th Street, Suite 607
Austin, Texas 78701

> Re:   No. 15-24-00120-CV; *State of Texas v. Harris County*, in the Fifteenth Court of Appeals, Austin, Texas

Dear Mr. Prine:

At oral argument, the Court raised issues not discussed in the parties' briefing and invited a post-argument letter. Please forward this letter to the Chief Justice Brister, Justice Field, and Justice Farris.

## I.    The trial court had plenary power to amend its judgment and strike the pleadings.

Justice Field questioned the trial court's striking the pleadings after the initial final judgment granting the plea to the jurisdiction. The Attorney General has not argued that the trial court lacked the power to amend its judgment and strike the pleadings after granting the plea to the jurisdiction.

First, granting the Rule 12 motion does not conflict with a lack of jurisdiction because a "trial court's ruling on a motion to show authority is not a decision on the merits or determination of ultimate questions of fact. It is simply a pretrial determination of an attorney's authority to represent a party." *Tanner v. Black*, 464 S.W.3d 23, 26 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *accord In re Moran*, 635 S.W.3d 394, 402 (Tex. App.—Beaumont 2021, orig. proceeding); *see also Paxton v. City of Austin*, 2024 WL 4446073, at *3 (Tex. App.—Austin [15th Dist.] 2024, pet. filed) (noting rule that court may not issue merits decision if it lacks jurisdiction).

Second, granting a plea to the jurisdiction does not deprive the court of its "plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed." Tex. R. Civ. P. 329b(d).

"When a trial court signs a final judgment, it retains jurisdiction to modify its judgment for 30 days from its signing." *Ex parte City of Irving*, 2024 WL 5172273, at *3 (Tex. App.—Austin [15th Dist.] 2024, no pet. h.) (citation omitted). So, Texas courts have routinely recognized a district court's plenary power to modify or amend orders granting pleas to the jurisdiction up to thirty days after entry. *See In re Harris*, 2024 WL 847660, at *3 (Tex. App.—Austin 2024, orig. proceeding); *Rodarte v. Bexar County*, 2013 WL 1908381, at *2 (Tex. App.—San Antonio 2013, pet. denied).

Third, a district court may strike pleadings while it has plenary power. A trial court's power under Rule 329b(d) is "virtually absolute." *In re Provine*, 312 S.W.3d 824, 829 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding) (Bland, J.); *accord DeGroot v. DeGroot*, 260 S.W.3d 658, 662 (Tex. App.—Dallas 2008, no pet.); *Anderson v. Archer*, 2019 WL 6205524, at *4 (Tex. App.—Austin 2019, pet. denied). Consistent with this broad authority, trial courts may rule on new motions filed during the plenary period that would make changes to the judgment. *See Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594, 596 (Tex. 1996) (permitting trial court to rule on motion for sanctions that was not pending when non-suit was filed); *see also Moran*, 635 S.W.3d at 402 (Rule 12 motion "functioned as a motion for new trial" under Rule 329b).

Accordingly, a trial court may amend its final judgment to strike pleadings in addition to granting a plea to the jurisdiction—so long as it does so within thirty days of the original judgment.

## II.     The Declaratory Judgment Act does not authorize the Attorney General to represent the State in this case.

Chief Justice Brister asked whether Declaratory Judgment Act provides the Attorney General the requisite statutory authority to represent the State in the district court in this case. The Attorney General has not so contended. Nor could he.

The relevant statutory provision only applies in cases involving "municipal" ordinances or franchises, which are not involved here:

> *In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality* must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, *the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard.*

Tex. Civ. Prac. & Rem. Code § 37.006(b) (emphasis added). Because Harris County is not a municipality and the Community Prosperity Program is not a municipal ordinance or franchise, this provision does not apply. *See Coryell County v. H&S Perryman Ranch, LLC*, 2024 WL 48201, at *4 (Tex. App.—Waco 2024, no pet.) ("Perryman cannot rely on section 37.006(b) of the UDJA . . . because Coryell County is not a municipality."); *EMCF Partners, LLC v. Travis County*, 2017 WL 672457, at *6 n.8 (Tex. App.—Austin 2017, no pet.) (same); *cf. Dawson v. Fort Bend County*, 2022 WL 1041107, at *3 n.8 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) ("[T]he County is not a municipality and statutes relating to municipalities do not apply.").

The Court need not decide this issue. At the hearing and in his appellant's brief, the Attorney General had the burden to affirmatively demonstrate his authority to represent the State in the district court. *See* Tex. R. Civ. P. 12 ("At the hearing on the motion, the burden of proof shall be upon the challenged attorney to show sufficient authority to prosecute or defend the suit on behalf of the other party."); Tex. R. App. P. 38.1(i). So, his choice not to rely on or invoke the Declaratory Judgment Act for that authority should dispose of the need to address it, at least in this case.

## III.   The statute adopting the common law as the rule of decision does not supply the requisite authority.

Justice Farris asked whether the statute adopting the common law supplied the requisite statutory authority for the Attorney General to represent the State in the trial court. It did not. The Attorney General did not invoke this statute in the Rule 12 hearing or cite it in his appellate briefs. His arguments on the common-law power conflate two distinct concepts:

(1) <u>Common-law cause of action:</u> A common-law *ultra vires* action authorizes courts to grant relief when government officials violate the law;

(2) <u>Common-law governmental powers:</u> The Attorney General has some common-law, inherent powers to take certain actions—outside of the powers defined in the Constitution and statutes.

It is critical not to conflate these concepts.[1] The common-law statute imported the former; our written constitution precludes the latter.

The statute adopting the common law only supplies the substantive "rule of decision" for deciding court cases (e.g., the elements establishing liability or a defense). "Texas was never a British colony nor an American territory and the common law comes to us by adoption rather than by inheritance." *S. Pac. Co. v. Porter*, 331 S.W.2d 42, 45 (Tex. 1960). Pursuant to the article of the 1836 Constitution addressing the judiciary, the Congress of the Republic provided: "The Common Law of England (so far as not inconsistent with the Constitution or the Acts of Congress now in force) shall, together with such acts be *the rule of decision* in this Republic, and shall continue in full force until altered or repealed by Congress."[2] A "rule of decision" is a "rule, statute, body of law, or prior decision that provides the basis for deciding or adjudicating a case." *Rule of Decision*, Black's Law Dictionary (12th ed. 2024). To this day, the statute addresses *only* the "rule of decision" for deciding cases. *See* Tex. Civ. Prac. & Rem. Code § 5.001(a).

The Supreme Court has recognized the statute's limited scope, noting: "it would be . . . improper to say that . . . that the common law of England was adopted for any and all purposes, because it was adopted as a 'rule of decision.'" *Courand v. Vollmer*, 31 Tex. 397, 399-400 (1868). It was adopted "for this only." *Id.*

The U.S. Supreme Court has recognized the distinction between a rule of decision and a particular person's power to enforce the law in court. The Supremacy Clause "creates a rule of decision" that "instructs courts what to do when state and federal law clash"; but it "is silent regarding who may enforce federal laws in court,

---

[1]     The Attorney General's reply and rebuttal argument confused these concepts. *See* State Reply 12-13. While *the Attorney General* cannot represent the State in the district courts absent legislation, the County and *the State* both can bring suit for common-law causes of action.

[2]     Act approved Jan. 20, 1840, 4th Cong., R.S., § 1, 1840 Repub. Tex. Laws 1, 3, *reprinted in* 2 H.P.N. Gammel, The Laws of Texas 1822–1897, at 177 (Austin, Gammel Book Co. 1898) (emphasis added); *see* Repub. Tex. Const. of 1836, art. IV, § 13.

and in what circumstances they may do so." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25 (2015). Likewise, the statute adopting the common law in Texas supplies a rule of decision for adjudicating cases, but it is silent regarding who may represent the State to enforce state laws in court and under what circumstances they may do so.

Ultimately, the "powers of government in England have been distributed by immemorial custom and precedent, mutual adjustment and adaptation, without any written constitution defining the distribution." *Kuechler v. Wright*, 40 Tex. 600, 681 (1874). In Texas, we do not have that system: our written constitution and statutes define the powers of government officials, and they did not give power to the Attorney General to represent the State in the district courts in this case. Absent a statute, that power is expressly and exclusively given to the county attorneys. Tex. Const. art. V, § 21. So, the statute adopting the common law as the "rule of decision" does not supply the Attorney General power to act for the State.

### IV. The Court should not follow *Yett*'s obiter dictum suggesting inherent power.

Justice Farris asked whether *Yett v. Cook*, 281 S.W. 837 (Tex. 1926) contained judicial dictum regarding common-law power of the Attorney General to institute suit for the State that should be followed.[3] The Attorney General's appellate briefing had not cited *Yett* for that specific proposition, with good reason.

#### A. *Yett*'s dictum regarding the Attorney General's ability to institute suit for the State is not judicial dictum, but rather obiter dictum.

*Yett*'s dictum on the *Attorney General*'s power to bring suit for the State is not judicial dictum, but rather unpersuasive, erroneous, non-binding obiter dictum.

In *Yett*, a citizen sued Austin city officials, seeking a writ of mandamus to compel them to call an election that he claimed was required by an amended city

---

[3] Judicial dictum is "a statement made deliberately after careful consideration and for future guidance in the conduct of litigation" and "is at least persuasive and should be followed unless found to be erroneous." *Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 399 (Tex. 2016). Conversely, obiter dictum is "something said in passing," "without argument, or full consideration of the point." *Id.* at 400; *Univ. of Hous. Sys. v. Jim Olive Photography*, 580 S.W.3d 360, 371 n.15 (Tex. App.—Houston [1st Dist.] 2019), *aff'd*, 624 S.W.3d 764 (Tex. 2021) (citation omitted). *Yett*'s dictum on the Attorney General's instituting suit for the State is obiter dictum.

charter. The Supreme Court ordered the suit dismissed, holding that the plaintiff did not have standing because his asserted interest as "a citizen and taxpayer" was "that of the general public only." *Id.* at 840–41. Then, in dictum,[4] the court made two additional comments, both minimizing the concern that no one would be able to bring suit if the general public could not.

**1.** ***The State* can maintain an action to prevent abuse of power by public officers.** The *Yett* court wrote that "the people of the city are not without remedy" because "the state . . . can maintain a mandamus suit for redress of the wrongs complained of, if any exist." *Id.* at 842. "The rule is an elementary one that the state may maintain an action to prevent an abuse of power by public officers, and in general protect the interest of the people at large in matters in which they cannot act for themselves." *Id.* Further, "the state has a justiciable 'interest' in its sovereign capacity" in ensuring cities follow the law—for standing purposes. *Id.* Harris County does not dispute these points here.

The Supreme Court's citations to *Yett* in *State v. Hollins* are therefore appropriately limited to these two specific propositions. 620 S.W.3d 400, 405 & n.21, 410 & n.45 (Tex. 2020). *Hollins* says nothing at all about the Attorney General. *Id.*[5]

**2.** ***The Attorney General* has the power to institute mandamus suits for the State—not followed by *Hollins*.** The *Yett* court added further dictum, stating in a single, conclusory sentence: "[s]ince the state can bring a mandamus suit similar in purpose to the one before us, it is elementary that the Attorney General has the power to institute such an action." *Id.* at 843. That inherent-power assertion is unpersuasive and wrong. *Hollins* did not cite this page of *Yett* at all.

In suggesting that the Attorney General has inherent power to institute suit on behalf of the State, *Yett* relied on nothing in any statute or the Constitution.

---

[4] Everything from "However, the people of the city are not without remedy . . . ," onwards is dictum because none of it is essential to the outcome of the case. *Yett*, 281 S.W. at 842.

[5] *Hollins* never addresses the power of the Attorney General to represent the State—that issue was not raised. State Br. 29. "Needless to say, [the Supreme Court's] silence on an issue never raised has no precedential effect." *Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 663 (Tex. 2021) (Blacklock, J., dissenting).

Worse, *Yett* did not discuss, let alone distinguish, the ample, relevant Supreme Court precedent indicating the Attorney General lacked such authority.[6]

Instead, the court cited Texas cases that are inapposite when their actual holdings are considered. *State v. De Gress*, 11 S.W. 1029 (Tex. 1888) involved a proceeding brought by a district attorney and not the attorney general. The other two cited decisions—*State v. Farmers' Loan & Tr. Co.*, 17 S.W. 60 (Tex. 1891), and *Queen Ins. Co. v. State*, 22 S.W. 1048, 1052 (Tex. Civ. App. 1893), *rev'd*, 24 S.W. 397 (Tex. 1893)—were cases that the Attorney General pursued in accordance with his *express constitutional power* to take action in the State's name in order to prevent the unlawful actions of private corporations. *Farmers' Loan*, 17 S.W. at 64; *Queen*, 22 S.W. at 1052. The decisions contained broad statements concerning the Attorney General's hypothetical inherent powers, but in both cases, those statements were tethered to the Attorney General's express constitutional power to regulate private corporations—a power not relevant to *ultra vires* suits against county officials. *See Farmers' Loan & Tr. Co.*, 17 S.W. at 66; *Queen Ins. Co.*, 22 S.W. at 1052. Unsurprisingly, a *statute* was not required when the Constitution itself authorized the Attorney General's actions. Thus, the broad statements in *Farmers'* and *Queen* were themselves dictum tethered to the express constitutional authority to sue over private charters.

In sum, *Yett*'s single, conclusory sentence asserting the Attorney General's power to institute suit for the State is not supported by any persuasive Texas authority; and it fails to address the key authorities from the Supreme Court and the Constitution itself indicating the Attorney General's lack of power to represent the State in the district courts. *Yett*'s dictum on the Attorney General's powers does not appear to have been "made deliberately after careful consideration and for future guidance in the conduct of litigation," but rather as "something said in passing," "without argument, or full consideration of the point." *Seger*, 503 S.W.3d at 399; *Univ. of Hous.*, 580 S.W.3d at 371 n.15. And it conflicts with numerous Supreme

---

[6] *See State v. Moore*, 57 Tex. 307, 312-16 (1882) (concluding county attorneys had exclusive power to represent the State in district courts absent constitutional provision to the contrary); *Day Land & Cattle Co. v. State*, 4 S.W. 865, 867 (Tex. 1887) (rejecting "implied power resulting from the general grants of power or imposition of duties" "in a government in which the duties of all officers, as well as their powers, are defined by written law"); *Brady v. Brooks*, 89 S.W. 1052 (Tex. 1905) (permitting the Legislature to expand the Attorney General's authority to represent the State in district court but otherwise not disturbing *Moore*'s holding); *Maud v. Terrell*, 200 S.W. 375, 376 (1918) (Absent statute authorizing Attorney General to represent the State, "the powers thus conferred by the Constitution upon [county attorneys] are exclusive.").

Court decisions before and after. Therefore, *Yett*'s sentence about the Attorney General's authority to institute suit for the State was erroneous, obiter dictum and need not be followed. *Seger*, 503 S.W.3d at 399.

### B. *Yett*'s inherent-authority dictum has not been followed since *Harney*.

As discussed at oral argument, whatever precedential or persuasive value *Yett* had in 1926, it was subsequently eliminated by the Supreme Court's embrace and approval of the holding and reasoning of *State ex rel. Downs v. Harney*, 164 S.W.2d 55, 58 (Tex. App.—San Antonio 1942, writ ref'd w.o.m.); *see Garcia v. Laughlin*, 285 S.W.2d 191, 194 (Tex. 1955) ("[S]uch action by this Court, of necessity, approved the holding of the Court of Civil Appeals that the Attorney General was without authority to bring such suit . . . because that issue was directly decided, and had such holding been incorrect we could not have failed to have granted the writ on such an important law question.").

Since *Harney* was decided in 1942, *Yett* has never been followed by any Texas appellate court for the proposition that the Attorney General has inherent power to institute suits on behalf of the State in district courts without a statute. Conversely, the broad reasoning and holding of *Harney* and *Garcia*, applicable here, have been embraced in numerous Supreme Court opinions (discussed below).

After oral argument, Harris County confirmed that the only case that addresses *Harney* and *Garcia* along with the inherent-authority dictum in *Yett* is *Hill v. Lower Colo. River Auth.*, 568 S.W.2d 473 (Tex. App.—Austin 1978, writ ref'd n.r.e.). *Hill* rejected *Yett*'s "gratuitous statements and dicta" in favor of following *Harney* and *Garcia*. *Id.* at 479-80. *Hill*'s doing so was not limited to the (unusual) context of the Attorney General suing a state agency: "We find in reviewing the cases decided by the courts of Texas a consistent adherence to the principle that the attorney general derives his power and authority in office from the Constitution and the laws of the State duly enacted by the Legislature." *Id.* at 480. That is a broad rejection of inherent authority.

The Attorney General has recognized that *Yett*'s suggestion of inherent or common-law authority was overtaken by *Harney* and *Garcia*. In *Hill*, the "Attorney General concede[d] that the recognition of common law authority believed to be found in the cases just reviewed [including *Yett*] 'is interrupted by three cases,'" including *Harney* and *Garcia*. *Id.* at 479. That concession in 1978 is consistent with the Attorney General's brief to the Supreme Court just two years ago arguing "the

Attorney General requires legislative authorization to represent the State in a state trial court." County Br. App. 7. For that argument, he relied on *Harney* and *Garcia*; did not cite *Yett* at all; and recognized that certain statutory language "would have been unnecessary if the Attorney General had the inherent or implicit authority to bring suit on behalf of the State." *Id.* at 41-42.[7]

### C. The well-reasoned conclusions of *Harney* and *Garcia* have prevailed.

Even though Harris County has relied on *Harney* and *Garcia* and *Hill* throughout this case, the Attorney General never addressed them until oral argument. *See* County Br. 22, 24; CR.118-20, 494-96; 2.RR.136-37. The Attorney General's mistaken contention at oral argument was that *Harney* and *Garcia* were limited to the context of the Attorney General's suing for the State on statutory causes of action. Not so.

Unlike *Yett*'s dictum, "[t]he Harney case very ably and thoroughly discusses the rights and powers of the Attorney General in his representation of the State in its litigation." *Garcia*, 285 S.W.2d at 195. Although *Harney* and *Garcia* both involved statutory claims, the courts' broad reasoning is not limited to that context; rather, the reasoning applies with equal force to *all* suits by the Attorney General for the State. The holdings in *Harney* and *Garcia* rest on two key principles:

(1) <u>The Constitution excluded the Attorney General from representing the State in district courts:</u> "The powers conferred by the Constitution upon the state officials are generally held to be exclusive . . . ." *Garcia*, 285 S.W.2d at 194 (collecting cases). Applied here, "it is the exclusive province of the district and county attorneys to institute the proceedings under the provision of Art. 5, § 21, of the Constitution, requiring county attorneys to represent the State in all cases in the district and inferior courts in their respective counties." *Id.* at 196 (quoting *Harney*, 164 S.W.2d at 58). Thus, absent legislation, the Attorney General is excluded from representing the State in the district courts by the Constitution's expressly giving that power to the county attorneys. This exclusion does not turn on whether the cause of action is created by statute or the common-law—it applies to "all cases in the District and inferior courts." Tex. Const. art. V, § 21.

---

[7] While the Attorney General now tries to cabin the *Longoria* brief to statutory causes of action, the reasoning and authorities in Sections III.A-B of his brief apply with equal force to all representation of the State by the Attorney General in the district courts, regardless of claims.

(2) <u>The Attorney General only exercises powers in the Constitution and statutes, which courts cannot expand.</u> "As the powers and duties of the Attorney General are prescribed by the Constitution and Statutes, those powers must be limited to those so prescribed, and may not be enlarged by the courts." *Garcia*, 285 S.W.2d at 194 (quoting *Harney*, 164 S.W.2d at 56). "[E]xcept in the manner authorized by the Constitution, these powers cannot be enlarged or restricted." *Id.* The Constitution authorizes the Legislature to expand the Attorney General's powers to represent the State in the trial courts. *See Brady v. Brooks*, 89 S.W. 1052, 1055-57 (Tex. 1905). It does not authorize this Court to expand such powers through resort to the common law.

*Garcia* and *Harney* applied these two broad principles to conclude: because there was no statutory or constitutional provision authorizing the Attorney General to institute suit for the State, the Attorney General could not assert or exercise such power, and "such power and duty vests in the county attorney" exclusively. *Garcia*, 285 S.W.2d at 195 (quoting *Harney*, 164 S.W.2d at 58). The courts would not and could not recognize any inherent or implied power to represent the State outside of a statute or constitutional provision. *See Harney*, 164 S.W.2d at 59.

In contrast to *Yett*'s inherent-authority dictum, *Harney*'s and *Garcia*'s two broad principles above have prevailed as Texas law. *Perry* embraced both: "'[T]he powers conferred by the Constitution upon the state officials are generally held to be exclusive, and except in the manner authorized by the Constitution, these powers cannot be enlarged.' . . . [T]he Attorney General can only act within the limits of the Texas Constitution and statutes, and courts cannot enlarge the Attorney General's powers." *Perry v. Del Rio*, 67 S.W.3d 85, 91–92 (Tex. 2001) (quoting *Garcia* and citing *Harney*). These principles are reiterated in numerous Supreme Court[8] and federal court[9] decisions.

---

[8] *Webster v. Comm'n for Lawyer Discipline*, 2024 WL 5249494, at *12 (Tex. 2024) (quoting *Perry* and citing *Garcia*); *Office of the Attorney Gen. of Tex. v. C.W.H.*, 531 S.W.3d 178, 184 (Tex. 2017) (quoting *Perry*); *City of Galveston v. State*, 217 S.W.3d 466, 470 & n.25 (Tex. 2007) (citing *Perry*); *Farmers Grp., Inc. v. Lubin*, 222 S.W.3d 417, 424 & n.39 (Tex. 2007) ("We cannot authorize a broader role for the attorneys general than the Legislature has." (citing *Perry*)).

[9] "Texas courts have consistently held that the Texas AG is powerless to act in the absence of explicit statutory or constitutional authorization. . . . [T]hey have dismissed actions in which the AG attempted to rely upon implied powers without express authority from the legislature. . . . The AG's claim of authorization through his common law power must be rejected . . . ." *Texas v. Ysleta*

In sum, the Court should not follow *Yett*'s inherent-power obiter dictum. Rather, it should conclude that the Constitution excludes the Attorney General from representing the State in the district court because it provides "County Attorneys shall represent the State in all cases in the District and inferior courts." Tex. Const. art. V, § 21. While the Legislature can give the Attorney General that authority, it has not done so for *ultra vires* suits against counties and their officials.

## V.     Harris County can enforce its contracts with Program participants.

Justice Farris asked whether the disbursement of the final Program payments to participants effectively ends Harris County's "control" over the program because the County would lack any mechanism to remove participants from the program at that point. The Attorney General's briefs had not made any such argument regarding the final payment. Harris County explained that the County could still sue to enforce its contract with participants, in which they agreed to spend the funds on basic needs. Counsel for the State claimed in rebuttal that Local Government Code § 262.007 means that the County "may sue or be sued" only on contracts "for engineering, architectural, or construction services or for goods related to engineering, architectural, or construction services," meaning the County lacks the requisite authority to enforce its contracts with Program participants.

That is incorrect. The words "sue and be sued" in § 262.007 do not otherwise limit the County's ability to sue on contracts to which it is a party. And in the same chapter of the Local Government Code, § 262.004 plainly states that "a suit may be initiated and prosecuted" on a "contract, covenant, agreement, or writing in which a person is bound to a county," without limitation to the subject matter of the contract. Tex. Loc. Gov't Code § 262.004; *see Brite v. Atascosa County*, 247 S.W. 878, 880 (Tex. App.—San Antonio 1923, writ dism'd w.o.j.) (describing predecessor version of § 262.004 as cloaking the county "with the authority to sue on such instruments in its own name"). Accordingly, the County retains the ability to sue Program participants for breaches of their contract with the County even after the Program's last payment is issued.[10]

---

*del Sur Pueblo*, 79 F. Supp. 2d 708, 712-14 (W.D. Tex. 1999), *aff'd*, 237 F.3d 631 (5th Cir. 2000) (citing *Garcia* and *Harney*); *Texas v. Ysleta del Sur Pueblo*, 2018 WL 1474679 (W.D. Tex. 2018).

[10] In its reply, the State argued that Harris County's position on the Attorney General's power to bring *ultra vires* claims would also render the County impotent to bring common law breach of contract claims outside of those specified in § 262.007(a). Reply at 12-13. As explained above, the State conflates the *County* (the party suing) with the person bringing suit on its behalf.

Harris County respectfully requests that the Court affirm.

Sincerely,

Grant B. Martinez
*Counsel for Appellees*

---

Harris County's argument regarding the Attorney General's authority therefore would not have any effect on the County's common law contractual rights.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was served on all counsel of record in this case, identified below, on February 21, 2025, electronically through the electronic filing manager in compliance with the Texas Rules of Appellate Procedure:

Ken Paxton
Brent Webster
Ralph Molina
James Lloyd
Kimberly Gdula
William D. Wassdorf
William H. Farrell (lead counsel)
Benjamin Wallace Mendelson
**OFFICE OF THE ATTORNEY GENERAL**
P.O. Box 12548 (MC 059)
Austin, Texas 78711
Phone: (512) 936-1700
Fax: (512) 474-269
Biff.Farrell@oag.texas.gov
Ben.Mendelson@oag.texas.gov

*Counsel for Appellant*

*/s/  Grant B. Martinez*
Grant B. Martinez

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Grant Martinez on behalf of Grant Martinez
Bar No. 24104118
gmartinez@yettercoleman.com
Envelope ID: 97654725
Filing Code Description: Letter
Filing Description: Harris County Letter Post-Argument
Status as of 2/21/2025 2:33 PM CST

Associated Case Party: The State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Ben Mendelson | | Ben.Mendelson@oag.texas.gov | 2/21/2025 1:04:45 PM | SENT |
| Nicole A.Myette | | nicole.myette@oag.texas.gov | 2/21/2025 1:04:45 PM | SENT |
| William Farrell | | biff.farrell@oag.texas.gov | 2/21/2025 1:04:45 PM | SENT |

Associated Case Party: Harris County, Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Christopher Garza | 24078543 | christopher.garza@harriscountytx.gov | 2/21/2025 1:04:45 PM | SENT |
| Jonathan Fombonne | 24102702 | jonathan.fombonne@harriscountytx.gov | 2/21/2025 1:04:45 PM | SENT |
| Eleanor Matheson | 24131490 | Eleanor.matheson@harriscountytx.gov | 2/21/2025 1:04:45 PM | SENT |
| Christian Menefee | 24088049 | christian.menefee@harriscountytx.gov | 2/21/2025 1:04:45 PM | SENT |
| Ryan Cooper | 24123649 | ryan.cooper.work@gmail.com | 2/21/2025 1:04:45 PM | SENT |
| Andrea Mintzer | | Andrea.Mintzer@harriscountytx.gov | 2/21/2025 1:04:45 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Delonda Dean | | ddean@yettercoleman.com | 2/21/2025 1:04:45 PM | SENT |
| Yetter Coleman | | efile@yettercoleman.com | 2/21/2025 1:04:45 PM | SENT |
| Edward Swidriski | 24083929 | Edward.Swidriski@harriscountytx.gov | 2/21/2025 1:04:45 PM | SENT |
| Toni Shah | | toni.shah@oag.texas.gov | 2/21/2025 1:04:45 PM | SENT |
| Athena Leyton | | athena.leyton@oag.texas.gov | 2/21/2025 1:04:45 PM | SENT |
| Grant Martinez | | gmartinez@yettercoleman.com | 2/21/2025 1:04:45 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Grant Martinez on behalf of Grant Martinez
Bar No. 24104118
gmartinez@yettercoleman.com
Envelope ID: 97654725
Filing Code Description: Letter
Filing Description: Harris County Letter Post-Argument
Status as of 2/21/2025 2:33 PM CST

Case Contacts

| Grant Martinez | | gmartinez@yettercoleman.com | 2/21/2025 1:04:45 PM | SENT |
| --- | --- | --- | --- | --- |
| Lily Hann | | lhann@yettercoleman.com | 2/21/2025 1:04:45 PM | SENT |