**ESTATE of W. T. WAGGONER, Petitioner,**

v.

**Wilmer GLEGHORN, Respondent.**

No. A–9852.

Supreme Court of Texas.

April 15, 1964.

Pruitt & Hughes, Vernon, for petitioner.

R. J. Balch, Seymour, for respondent.

WALKER, Justice.

Wilmer Gleghorn, respondent, owns 1,600 acres of land completely surrounded by land of the W. T. Waggoner Estate, petitioner. The Wichita River meanders through respondent's property in a general easterly and westerly direction. About 900 acres of his land are north of the river, and respondent's residence is located on the 700 acres lying south of the river. He has a recognized roadway from such residence across Waggoner land to a public road on the south. Respondent brought this suit to establish his right to a roadway from the public road across Waggoner land to the north portion of the 1,600 acres. contending that he is entitled to the same: (1) as a way of necessity, and (2) by virtue of the provisions of Article 1377b. Vernon's Ann.P.C. After a trial to the court without a jury, judgment was rendered awarding respondent the road he sought, and the Court of Civil Appeals affirmed. 370 S.W.2d 786.

As pointed out by the Court of Civil Appeals, the three requisites for a way of necessity are: (1) unity of ownership of the alleged dominant and servient estates; (2) that the roadway is a necessity; and (3) that the necessity existed at the time of the severance of the two estates. See Duff v. Matthews, 158 Tex. 333,. 311 S.W.2d 637; Othen v. Rosier, 148 Tex. 485, 226 S.W.2d 622. There is no evidence that respondent's property and that of petitioner were ever under common ownership, and we agree with the intermediate court that the judgment in his favor cannot be upheld on the theory that he is entitled to an easement by necessity.

Section 2 of Article 1377b, the relevant provisions of which are quoted in the margin,[1] purports to grant to anyone who claims.

---

1. "(b) 1. A person who claims the right to use land which is either wholly or partially surrounded by land owned by another person shall have the right to enter the surrounding land for purposes of ingress and egress to such land that is wholly or partially surrounded. Such person shall follow for purpose of ingress and egress to such land, a reasonable route designated by the owner, proprietor, lessee or person in charge of the surrounding land. Such person who claims a right to use land wholly or partially surrounded, shall furnish the owner, proprietor, lessee, or person in charge of the surrounding land, with a description of the location and boundaries of the land wholly or partially surrounded, and if requested by the owner, proprietor, lessee or person in charge of the surrounding land, shall go upon the wholly or partially surrounded land and point out the boundaries of such land so as to enable the owner, proprietor, lessee or person in charge of the surrounding land to designate a reasonable route for ingress and egress to such wholly surrounded or partially surrounded land. In the event the owner of the surrounded land shall not have a survey of his claim and should the owner of the surrounding land demand the boundaries of the sur-

the right to use land which is wholly or partially surrounded by land of another person the right to an easement over the surrounding land for ingress and egress to and from the surrounded property. Petitioner attacks this statute on a number of different constitutional grounds. As we view the case, it is necessary for us to consider only one of these questions.

"Section 17 of Article 1 of the Constitution of Texas, Vernon's Ann.St., provides that 'No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by consent of such person; * * *.' That provision not only requires the payment of adequate compensation for property taken for public use, it prohibits the taking of property for *private* use. Marrs v. Railroad Commission, 142 Tex. 293, 177 S.W.2d 941, 949; Coastal States Gas Producing Co. v. Pate, 158 Tex. 171, 309 S.W.2d 828, 833. The provision operates as a limitation on the power of the Legislature as well as a limitation on the power of governmental agencies and public and private corporations. McInnis v. Brown County Water Imp. Dist., Tex. Civ.App., 41 S.W.2d 741, 744, writ refused. The Legislature may not authorize that which the Constitution prohibits." Maher v. Lasater, 163 Tex. 356, 354 S.W.2d 923.

Respondent bought all of his land as one tract and in one transaction. Part of the property lying north of the river is in a government soil conservation program, and it is necessary for respondent to keep down all noxious weeds thereon. The remainder of his land north of the river is leased as pasture. All of the ranch is in a game preserve, but commercial hunting is not permitted on the land which is in the government program. At different seasons of the year the Wichita River varies in depth from six inches to eight feet. Respondent and his lessees have crossed the same frequently, but it is impossible to cross during periods of flood and always inconvenient to do so. The roadway here in question extends from the public highway east across petitioner's land for some six miles to the northwest corner of respondent's property. While respondent needs the same for his own convenience and that of his tenants and others who have occasion to be on the land north of the river, no one else will receive any direct benefit from the road. The economic use of such property will undoubtedly be facilitated by a ready means of access from the highway, but the public interest is not otherwise served in any way by the right of way which respondent seeks.

The case is thus controlled by Phillips v. Naumann, 154 Tex. 153, 275 S.W.2d 464, and Maher v. Lasater, 163 Tex. 356, 354 S.W.2d 923, which involved orders entered by commissioners courts purporting to open public roads across land owned by one person for access to property of another private individual as authorized by Article 6711, Vernon's Ann.Tex.Civ.Stat. The land to which the road in the Maher case led was completely isolated from public roads. Our

---

rounded land, then the expense of surveying the surrounded land shall be borne and paid by the owner of the surrounding land demanding the same.

"2. The owner, proprietor, lessee or person in charge of surrounding land shall designate a reasonable route for purposes of ingress and egress to land wholly or partially surrounded by such surrounding land within thirty (30) days after being notified in writing by the owner or surface lessee of the surrounded lands that such a route is needed, and if such route is not designated in writing within such thirty (30) days the owner or surface lessee of the surrounded lands shall have the right to select the shortest route to the said surrounded lands, having due regard to selecting the route which will least damage such surrounding lands and which will cause the least inconvenience to the owner or surface lessee of the surrounding lands. The owner or surface lessee of such surrounded lands shall notify the owner or surface lessee of the surrounding lands in writing of the route that he proposes to use, and he shall be confined to such route."

opinion points out that the only conceivable public purpose which such road could serve was to put the products of the soil and range into the economy of the community. It was held that this did not constitute a public use within the meaning of Article 1, Section 17, of the Texas Constitution, and that the order opening the road was unconstitutional and void. We there observed that our views on the question had been stated in the Phillips case as follows:

"It does not lie within the power of the Commissioners' Court to condemn a highway across petitioners' ranch in order to enable Naumann to establish a fishing camp or other commercial enterprise on his land. To do so would be taking private property for a private purpose."

In the context of the present controversy and aside from the fact that Article 1377b does not even purport to provide for compensation to a landowner whose property is taken for an access road, there is no material difference between the orders under attack in the Phillips and Maher cases and the statute upon which respondent now relies. Respondent contends that Article 1377b should be upheld as a valid exercise of the police power. We recognize the rule that damage to or loss of property resulting from a proper exercise of the police power does not constitute a taking under the power of eminent domain, and that compensation is not required to be paid therefor. See State v. Richards, 157 Tex. 166, 301 S.W.2d 597, and authorities there cited. It seems clear to us, however, that the permanent appropriation of an easement for a right of way for travel across a tract of land constitutes a "taking" within the purview of Article 1, Section 17, of the Constitution. In our opinion Article 1377b is unconstitutional and void to the extent that it purports to authorize the taking of private property for a private purpose.

The judgment of the Court of Civil Appeals is modified so as to provide: (1) that the judgment of the trial court, in so far as it awarded respondent a right of way or route for access to his property north of the Wichita River, be reversed and that judgment on that part of the case be rendered for petitioner; and (2) that the judgment of the trial court is otherwise affirmed. As so modified, the judgment of the Court of Civil Appeals is affirmed.