State v. MoPac 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-466-CV





STATE OF TEXAS,



 APPELLANT


vs.





CITY OF AUSTIN AND MISSOURI AND PACIFIC RAILROAD COMPANY,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT



NO. 477,213, HONORABLE PETE LOWRY, JUDGE PRESIDING



 




 The State of Texas ("State") appeals the district court's rendition of a partial
summary judgment and final judgment in favor of Appellees, City of Austin ("City") and Missouri
Pacific Railroad Company ("Mopac"). The State sought declaratory relief that a "public use"
clause in a patent deed from the State to the City imposed a restrictive covenant on the property,
known as Sand Beach Reserve (the "Reserve"), and that the City violated this restriction when it
formalized an agreement permitting Mopac's lessee to use access roads and parking facilities
located within the Reserve. Mopac intervened, contending the City had impliedly dedicated two
roadways that traverse the Reserve, thereby affording access to its property. The trial court
refused to find a restrictive covenant, but did hold that the roads crossing the Reserve to Mopac's
property had been impliedly dedicated to the public. We will affirm the trial court's judgment.



BACKGROUND


 This suit involves an area of land bordering the north shore of Town Lake in the
City of Austin. The State conveyed the Reserve to the City under a letter patent authorized by
the legislature in 1945. Both the statute and the patent deed provided in part: "The grant hereby
made to the City of Austin is made for public purposes and in the event of sale by the City of
Austin, of the property herein granted, all parts thereof so sold shall revert to the State." The
State contends that the phrase "for public purposes" imposes a restrictive covenant on the Reserve,
while the City argues the phrase is a mere recital that does not restrict its use of the property.

 Mopac owns land to the north of the Reserve and leases part of the property to a
bar owned by Batco, Inc., d/b/a the Cedar Door. In 1989, the City entered into a Use and
Maintenance Agreement ("Agreement") with the Cedar Door, allowing the bar's employees and
patrons to use two driveways and parking areas located on the Reserve to access the bar. The
State filed suit in Travis County district court seeking declaratory relief against the City on
grounds that the Agreement (1) violated the "public purposes" restriction in the State's grant to
the City and (2) violated Chapter 26 of the Texas Parks and Wildlife Code because parkland was
converted to another use without a public hearing. Mopac intervened, contending that the City
had impliedly dedicated the two roads to the public, thereby providing access to Mopac's property
from First Street, just north of Town Lake.

 The trial court rendered partial summary judgment for Appellees, holding that (1)
the "public purposes" language did not impose a restriction on the City's use of the Reserve; (2)
even if there were a restriction, providing access across the Reserve to Mopac's property served
a public purpose; and (3) the State lacked standing to complain of the City's use of the Reserve. 
At the conclusion of a bench trial on the remaining issues, the trial court rendered final judgment
that (1) the State also lacked standing to enforce Chapter 26 of the Parks and Wildlife Code; (2)
the City had impliedly dedicated two roadways across the Reserve, thus affording access to
Mopac's property; and (3) this implied dedication did not constitute a sale that would trigger a
reverter of the roads to the State.

 The State now appeals contending that the trial court erred in holding that the
Reserve is not encumbered with a restrictive covenant, in finding an implied dedication that serves
a public purpose, and in holding that the State lacks standing to bring this suit. (1)



DISCUSSION


The Restriction

 In its first point of error, the State complains that the trial court erred in finding
that the phrase "for public purposes" in the patent deed and in the Act of 1945 imposes no
restriction on the City's use of the Reserve. The City and Mopac contend that the reference to
"public purposes" is a mere recital of the State's motivation in making the grant to the City and
does not constitute a restrictive covenant. See Texas Elec. Ry. Co. v. Neale, 252 S.W.2d 451,
456 (Tex. 1952) (declaration in deed of purpose for which land is conveyed does not impose
condition upon title granted); Hughes v. Gladewater County Line Indep. Sch. Dist., 76 S.W.2d
471, 473 (Tex. 1934) (unconditional fee estate created by deed is not made conditional by other
language in deed reciting that grant was made for particular purpose).

 The State urges this Court to examine not only the patent deed but also the
legislature's intent in authorizing it. Courts may look to the circumstances and conditions
surrounding property to fairly determine the construction of covenants. Mitchell v. Gaulding, 483
S.W.2d 41, 42 (Tex. Civ. App.--Waco 1972, writ ref'd n.r.e.). We may properly construe
restrictive language in a deed to ascertain the intentions of the parties to the instrument. Couch
v. Southern Methodist Univ., 10 S.W.2d 973, 973-74 (Tex. Comm'n App. 1928, judgm't
adopted). In construing a grant of land from the State, a court must determine the legislature's
intent in making the conveyance. Schwarz v. State, 703 S.W.2d 187, 189 (Tex. 1986); see also
Weekes v. City of Galveston, 51 S.W. 544, 545 (Tex. Ct. App. 1899, writ ref'd).

 The State argues that the statutory clause "for public purposes" reveals legislative
intent to restrict the City's use of the Reserve and that the trial court erroneously overlooked this
clause as surplusage. General rules of statutory construction advise giving effect to all words in
a statute and not dismissing any language as surplusage, if possible. Chevron Corp. v. Redmon,
745 S.W.2d 314, 316 (Tex. 1987); University of Texas v. Joki, 735 S.W.2d 505, 508 (Tex.
App.--Austin 1987, writ denied).

 A history of the legislature's previous treatment of the Reserve reveals an intent
to restrict its use to public purposes. The State first leased the Reserve to the City in 1917,
providing it was to be used only in connection with the City's public water works. In 1932, the
City again leased the land for use as municipal parks and playgrounds. Then in 1941, the
legislature approved another lease to the City to use the Reserve for water-source protection,
waterfront development and recreational purposes and to make necessary improvements to "police
the land for the protection of public health." Tex. H.R. Con. Res. 159, 47th Leg., R.S. 1941
Tex. Gen. Laws 1533. Finally, in 1945, the legislature passed the act permitting the State to
convey the Reserve to the City "for public purposes."

 Despite this evidence of legislative intent, appellees contend that the policy favoring
unrestricted use of property defeats a restriction here. They rely on the rule of construction
requiring that language in deeds be strictly construed against the grantor. See Southampton Civic
Club v. Couch, 322 S.W.2d 516, 518 (Tex. 1958); Texas Elec. Ry. Co., 252 S.W.2d at 456. 
Appellees urge us to follow the policy of resolving ambiguous language in favor of free and
unrestricted use of property. Wilmoth v. Wilcox, 734 S.W.2d 656, 657 (Tex. 1987). We note,
however, that the precedent of construing language of conveyance strictly against the grantor may
be reversed for policy reasons when the State is the grantor.



The rule is also well settled that legislative grants of property, rights, or privileges
must be construed strictly in favor of the State on grounds of public policy, and
whatever is not unequivocally granted in clear and explicit terms is withheld. Any
ambiguity or obscurity in the terms of the statute must operate in favor of the State.



Schwarz, 703 S.W.2d at 189 (quoting Empire Gas & Fuel Co. v. State, 47 S.W.2d 265, 272 (Tex.
1932)). This distinction may be explained by the fact that the State holds land in trust for the
benefit of the people. Id. at 191. 

 The supreme court has enforced clearly worded restrictive covenants when they are
confined to a lawful purpose within reasonable bounds. Wilmoth, 734 S.W.2d at 657-58; Davis,
620 S.W.2d at 565. The phrase "for public purposes" is clearly worded; restricting land adjacent
to a river within a city to uses that serve the public is a reasonable and lawful goal. Considering
the historical use of this property and the evidence of legislative intent favoring public use of the
Reserve, and strictly construing the language of conveyance in favor of the State on public policy
grounds, we conclude that the phrase "for public purposes" imposed a restriction on the City's
use of the Reserve. Accordingly, we sustain the State's first point of error.



The State's Standing

 Having concluded that the Reserve must be restricted to public uses, we are next
asked to decide who may determine what is its proper public use. The State's second point of
error attacks the trial court's finding that the State lacks standing to challenge the City's use of
the Reserve. The State argues that the Attorney General may appropriately serve as a guardian
of the public interest to preclude the City from diverting use of the Reserve from the public
generally by entering into an agreement that benefits a private landowner. See Yett v. Cook, 281
S.W. 837, 842 (Tex. 1926) ("The rule is an elementary one that the state may maintain an action
to prevent an abuse of power by public officers, and in general protect the interest of the people
at large in matters in which they cannot act for themselves."). Additionally, the State argues that
the legislation authorizing the State to convey this land to the City somehow reserves to the State
the right to enforce the "public purposes" restriction. We disagree. See Hill v. Lower Colorado
River Auth., 568 S.W.2d 473, 479 (Tex. Civ. App.--Austin 1978, writ ref'd n.r.e.) (challenging
"gratuitous statements and dicta" in Yett v. Cook and questioning expansive common-law authority
of attorney general). 

 Having conveyed by letter patent all its interest in the property, save for its
possibility of reverter, the State, like similarly situated grantors, has no standing to enforce the
restriction. See Davis v. Huey, 608 S.W.2d 944, 956 (Tex. Civ. App.--Austin 1980), rev'd on
other grounds, 620 S.W.2d 561 (Tex. 1981). When the State conveyed the property it also
conferred upon the City the duty and the discretion to hold the Reserve in trust for the public. 
The State should not now be permitted to second-guess the City in determining what uses properly
serve the public. The restriction must be enforced by the City, as the City best interprets the
public interest, subject to legal or political complaints from its citizens. We overrule point of
error two.

 The eighth point of error complains of the trial court's finding that the State also
lacks standing to enforce Chapter 26 of the Texas Parks and Wildlife Code. At trial, the State
attempted to argue that the City executed the Agreement, changing the use of parkland, without
the appropriate public hearing. See Tex. Parks & Wild. Code Ann. § 26.001 (West 1991).

 In Persons v. City of Fort Worth, the court held that the appellant lacked standing
to maintain an action under Chapter 26 because the statute did not specifically grant such standing
and because appellant had not shown he was "specially injured" by the City's action. 790 S.W.2d
865 (Tex. App.--Fort Worth 1990, no writ). Likewise, the State has neither statutory authority
nor a special injury here that would permit it to enforce the Parks and Wildlife Code in these
circumstances. Point of error eight is overruled.

 Concluding that the State had no standing to challenge the City's use of the
Reserve, we also believe that the State has no standing to bring its third point of appeal, that the
trial court erred in holding that use of the Reserve or parts thereof to access Mopac's land serves
a public purpose. However, even assuming the State has standing, we nevertheless reject its
public-use argument. The State contends that providing access to a single tract of private land is
not a public use and cites, in support of this contention, Maher v. Lasater, 354 S.W.2d 923 (Tex.
1962), and Estate of Waggoner v. Gleghorn, 378 S.W.2d 47 (Tex. 1964) (state constitution does
not permit takings of private property for private purposes).

 The State overlooks the fact that courts liberally interpret which activities constitute
public use. Housing Auth. of Dallas v. Higginbotham, 143 S.W.2d 79, 84-85 (Tex. 1940); Dyer
v. Texas Elec. Serv. Co., 680 S.W.2d 883, 884-85 (Tex. App.--El Paso 1984, writ ref'd n.r.e.);
Tenngasco Gas Gathering Co. v. Fischer, 653 S.W.2d 469, 475 (Tex. App.--Corpus Christi 1983,
writ ref'd n.r.e.). By constructing paved roads where dirt paths historically provided access to
property north of the Reserve, the City benefitted the public. The public uses these roads for
access to Town Lake recreational facilities, as well as for access to Mopac's property. The
Agreement between the City and the Cedar Door allows the bar's employees and patrons to use
the roads and parking areas, along with the general public. The roads remain open to all. If these
roads incidentally afford a benefit to a private landowner, this does not invalidate their public use.


 

The question of whether or not in a given case the use is a public one depends
upon the character and not the extent of such use. . . . "It depends upon the extent
of the right the public has to such use, and not upon the extent to which the public
may exercise that right. It is immaterial if the use is limited to the citizens of a
local neighborhood, or that the number of citizens likely to avail themselves of it
is inconsiderable, so long as it is open to all who choose to avail themselves of it. 
The mere fact that the advantage of the use inures to a particular individual or
enterprise, or group thereof, will not deprive it of its public character."



Higginbotham, 143 S.W.2d at 84 (quoting West v. Whitehead, 238 S.W. 976, 978 (Tex. Civ.
App.--San Antonio 1922, writ ref'd)) (emphasis added). Hence, even if the State has standing on
appeal to attack the court's holding that access to the Mopac property serves a public purpose, we
overrule the third point of error.



Implied Dedication

 In points of error four, five, and six, the State complains that the trial court erred
in ruling that the City impliedly dedicated two roads leading across the Reserve to the railroad's
property. (2) The theory of implied dedication has also been described as common-law dedication. 
Barstow v. State, 742 S.W.2d 495, 504 (Tex. App.--Austin 1987, writ denied). In Barstow, we
held that the following factors must be established: (1) a clear, unequivocal act or declaration by
the landowner of an intention to set the land apart for a public use, and (2) evidence "that others
acted in reference to and upon the faith of such manifestation of intention." Id. at 505 (quoting
Ramthun v. Halfman, 58 Tex. 551, 553 (1883)). Acquiescence in public use must be coupled with
something more, either an overt act or declaration of intention, or "some additional factor that
implies a donative intention when considered in light of the owner's acquiescence in the public's
use of the roadway." Id. at 506.

 Historically the theory of implied dedication rests on the presumed intent of a
private landowner to devote property to public use. In this instance, the trial court applied the
theory to a public landowner, the City of Austin. One other Texas appellate court has applied the
doctrine of implied dedication to a public entity. See Medina Lake Protection Ass'n v. Bexar-Medina-Atascosa Counties Water Control & Improvement Dist. No. 1, 656 S.W.2d 91, 96 (Tex.
App.--San Antonio 1983, writ ref'd n.r.e.) (theory of implied dedication can apply to property of
governmental agency if use of road does not interfere with accomplishment of agency's purposes
or responsibilities). Following the reasoning of Medina Lake, we uphold the trial court's
application of the theory of implied dedication to this property in this context. 

 In the fourth point of error the State complains that there is no evidence or, in the
alternative, insufficient evidence to support the trial court's finding of implied dedication. We
attach to findings of fact the same weight that we attach to a jury's answers. Anderson v. City of
Seven Points, 806 S.W.2d 791, 794 (Tex. 1991). Findings of fact are reviewable for legal and
factual sufficiency of the evidence by the same standards used to review jury findings. Okon v.
Levy, 612 S.W.2d 938, 941 (Tex. Civ. App.--Dallas 1981, writ ref'd n.r.e) (citing Hall v.
Villarreal Dev. Corp., 522 S.W.2d 195 (Tex. 1975)).

 In addressing the no-evidence challenge, we must consider only the evidence and
inferences tending to support the finding of the trier of fact and disregard all evidence and
inferences to the contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex. 1986), cert.
denied, 111 S. Ct. 135 (1990). If the no-evidence challenge fails, we next consider if the evidence
is factually sufficient to support the trial court's finding. In this review, we must consider and
weigh all the evidence and should set aside the judgment only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951); see also
Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986).

 This record contains sufficient evidence to defeat both the no-evidence and the
insufficient-evidence challenges to the trial court's finding of implied dedication. The City
admitted that the public has a right to use the Reserve for access to the railroad property and that
this reserve has provided such access for at least seventy-five years. (3) Additionally, several
witnesses testified that the public has long had access through the Reserve to the property now
owned by the railroad, and further that the present paved roads generally follow the same paths
as the dirt roads historically used for access from First Street to earlier businesses conducted on
that property. There was testimony that some of those early establishments relied on this access
so extensively that they published First Street business addresses. In response to the City's
disclaimer of any intention to dedicate the roadways across the Reserve to public use, Mopac
introduced into evidence a resolution setting forth the City's intent to construct these paved
driveways for the general welfare and benefit of Austin citizens and the City's intent to maintain
them. This declaration is sufficient evidence of donative intention. The supreme court has
explained:



It is sufficient if the record shows unequivocal acts or declarations of the
landowner, dedicating same to public use, and where others act on the faith of such
dedication, the landowner will be estopped to deny the dedication, or to make any
future use of the property inconsistent with any purpose for which the land was
dedicated.



Owens v. Hockett, 251 S.W.2d 957, 958 (Tex. 1952).

 Having examined the elements of common-law dedication and the theory's
application to these facts, and having reviewed the evidence in this case, we deny the State's no-evidence challenge to the implied dedication ruling. Likewise, we cannot say that the
overwhelming weight of the evidence is such that the court's ruling is clearly wrong and unjust. 
Consequently, we overrule point of error four.

 In its fifth point of error the State complains that in applying the equitable doctrine
of common-law dedication, the equities do not favor the court's conclusion. We think the State
incorrectly measures the public purpose of maintaining parkland against the private benefit that
a dedicated road bestows on Mopac's property. Under the common-law doctrine of dedication,
a court can only find that property has been dedicated to the public, not to a private entity. Drye
v. Eagle Rock Ranch, Inc., 364 S.W.2d 196, 204 (Tex. 1962). If these roadways were dedicated,
they were dedicated for use by the public. Any benefit to the railroad was incidental to the use
intended for the public. If equities are to be weighed, we must measure the benefit the public will
derive from use of this land for access and parking, as opposed to its use as some form of
parkland. We are unable to say that the equities favor reserving the option to convert this narrow
strip of land to some undetermined future use as a park, rather than providing roadways and
parking areas for the public's present use of the existing Town Lake recreational areas, as well
as for access to the property north of the Reserve. We overrule point of error five.

 In point of error six, the State complains of the court's failure to admit certain
evidence that the railroad did not think it had legal access across the reserve to First Street. We
defer to the trial court's discretion in deciding issues relating to admission of evidence. Syndex
Corp. v. Dean, 820 S.W.2d 869, 873 (Tex. App.--Austin 1991, writ denied). Given our earlier
discussion that the law will only imply dedication of property for public use, which the public
must accept, we cannot conclude that the trial court abused its discretion in excluding evidence
of the railroad's lack of acknowledgement or assurance of the city's dedication of the roads in
question. We overrule point of error six.

 In point of error seven, the State urges us to hold that the trial court erred in not
finding that the implied dedication of the two roadways constituted a sale, causing that portion of
the property to revert to the state. We note that the State's theory of a sale to the railroad is
inconsistent with the theory of common-law dedication as we have discussed it; the City could
impliedly dedicate the two roads only to the public, not to a private party. The city's dedication
of two roads to the public does not constitute a sale to the railroad, even if the railroad derives
some incidental benefit, such as access to its property. We overrule the seventh point of error.



Additional Findings of Fact and Conclusions of Law

 By its ninth point, the State complains that the trial court erred in not making and
filing the specified additional or amended findings of fact and conclusions of law it requested. 
The State presently requests this Court to make these eighty-three additional or amended findings
of fact and conclusions of law. However, it addresses in its brief only the first additional finding
of fact, attempting to incorporate an appendix outlining support in the record for the remaining
eighty-two requested findings or conclusions. The State fails to cite specific authority in support
of its contentions. We conclude that there is insufficient argument and authority to support this
complaint on appeal. Accordingly, we hold that this point of error is waived. See Trenholm v.
Ratcliff, 646 S.W.2d 927, 934 (Tex. 1983).



CONCLUSION


 Although we disagree with the trial court's finding that the phrase "for public
purposes" imposes no restriction on the City's use of the Reserve, the trial court's error does not
necessitate reversal. Consequently, we affirm the trial court's final judgment, including its partial
summary judgment.



 

 Bea Ann Smith, Justice

[Before Justices Powers, Kidd and B. A. Smith]

Affirmed

Filed: August 25, 1993

[Do Not Publish]

1. [1] The City attempts to join the State in appealing the trial court's ruling on implied dedication,
but failed to file a notice of appeal. Because the implied dedication issue is before us for
determination, we need not decide if the City may urge its separate appeal of this matter.
2. [2] Mopac argues that the State has no standing to attack the finding of implied dedication; it
further argues that the City is precluded from raising this issue because it failed to perfect its
appeal. We have affirmed the trial court's ruling that the State has no standing to challenge the
City's use of the Reserve. However, the State retains a reversionary interest in any Reserve
property that is sold, and assuming that the State is entitled to declaratory relief on the issue of
whether common-law dedication occurred and whether it triggered the reverter, we will address
the propriety of the Court's rulings regarding implied dedication.
3. [3]  The City admitted the following requests for admissions:


 7. Admit that the reserve adjoining land to intervenor's property has been
utilized as access to our property for at least 75 years.


 . . . .

 

11. Admit that the public (the citizens of this state) have a right to use the Sand
Beach Reserve for access to intervenor's property.


12. Admit that the citizens of Austin, Texas have a right to use the Sand Beach
Reserve for access to our property.