Everitt E. MEEK and Donna Raye Meek, Appellants,

v.

Robert E. SMITH, County Judge of San Jacinto County, as substitute trustee, Gene Leviness and Eldon Hues, individually and as officers of the Coley Creek Cemetery Association, Appellees.

No. 09–98–090 CV.

Court of Appeals of Texas, Beaumont.

Submitted Oct. 7, 1999.

Decided Dec. 2, 1999.

E.R. Norwood, Karen McNair, Taylor & Norwood, Liberty, for appellant.

Robert F. Atkins, Coldspring, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

■ This appeal seeks a declaration from this Court that TEX. HEALTH & SAFETY CODE ANN. § 711.041 (Vernon Supp.2000) is unconstitutional as violative of the Due Process Clause of the Fourteenth Amendment of the United States Constitution,[1] and as violative of TEX. CONST. art. I, §§ 17 & 19. Appellees instituted the lawsuit in an effort to get the trial court to grant them access to the Coley Creek Cemetery through property owned by Everitt and Donna Meek. Construing appellees' pleadings liberally, said right of access was apparently to be found by granting appellees an easement by prescription or necessity, by some type of constructive dedication theory, or by the language contained in Section 711.041. The case was tried on the merits to the judge, no jury having been requested. At the conclusion of the evidence, the trial court rendered judgment for appellees solely on the authority of Section 711.041, apparently rejecting the easement and dedication theories of recovery. Appellees did not except to the trial court's judgment nor make any complaint of the trial court's failure to grant them an easement or make a finding of dedication. Those issues being before the trial court and apparently having been adjudicated adversely to appellees, appellees are now precluded from raising them. *See Hart v. Berko, Inc.,* 881 S.W.2d 502, 512 (Tex.App.—El Paso 1994, writ denied), *overruled on other grounds by Crown Life Ins. Co. v. Casteel,* 42 Tex. Sup.Ct. J. 945, 1999 WL 450773, *9 (July 1, 1999)(before appellee may complain on appeal of a part of a judgment by cross-point, it must except to judgment, file motion for new trial on the point, or indicate to trial court in some appropriate manner any dissatisfaction with the judgment as entered). The scope of this appeal is therefore limited to the propriety of the trial court's reliance on Section 711.041 as the sole basis for its judgment.

Section 711.041 reads as follows:

### ACCESS TO CEMETERY

(a) Any person who wishes to visit a cemetery or private burial grounds for which no public ingress or egress is available shall have the right to reasonable ingress and egress for the purpose of visiting the cemetery or private burial grounds. This right of access extends only to visitation during reasonable hours and only for purposes usually associated with cemetery visits.

(b) The owner or owners of the lands surrounding the cemetery or private burial grounds may designate the routes of reasonable ingress and egress.

The pertinent part of the Fourteenth Amendment prohibits any State from depriving any person of property without due

---

**1.** Appellants do not include the Takings Clause of the Fifth Amendment of the United States Constitution in their argument that Section 711.041 is unconstitutional. We therefore have no reason to consider the Fifth Amendment's Takings Clause in our analysis of the statutory provision in question.

process of law. The pertinent portion of Article I, § 17 contains the following language:

No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money; . . .

Finally, Article I, § 19, the Due Course provision of the Texas Constitution, reads in its entirety as follows: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

 Generally, a reviewing court may not consider constitutional issues on a broader basis than the record requires. *See Woods v. Reilly,* 147 Tex. 586, 218 S.W.2d 437, 442 (1949); *Kircus v. London,* 660 S.W.2d 869, 872 (Tex.App.—Austin 1983, no writ). An analysis of the constitutionality of a statute begins with the presumption of validity. *Barshop v. Medina County Underground Water Conserv. Dist.,* 925 S.W.2d 618, 629 (Tex.1996). When possible, we are to interpret legislative enactments in a manner to avoid constitutional infirmities. *Id.* We must resolve any ambiguities in a statute mindful of our obligation to reject interpretations which defeat the purpose of the legislation as long as another reasonable interpretation exists. *Id.*

 If the government appropriates property without paying adequate compensation, the owner may recover the resulting damages in an "inverse condemnation" suit. *See, e.g., City of Austin v. Teague,* 570 S.W.2d 389 (Tex.1978); *City of Abilene v. Burk Royalty Co.,* 470 S.W.2d 643 (Tex. 1971). An inverse condemnation may occur when the government physically appropriates or invades the property, or when it unreasonably interferes with the landowner's right to use and enjoy the property, such as by restricting access or denying a permit for development. *Taub v. City of Deer Park,* 882 S.W.2d 824, 826 (Tex.1994). Governmental restrictions on the use of property can be so burdensome that they result in a compensable taking. *San Antonio River Auth. v. Garrett Brothers,* 528 S.W.2d 266, 273 (Tex.Civ.App.— San Antonio 1975, writ ref'd n.r.e.).

 All property, however, is held subject to the valid exercise of the police power, and the government is not required to compensate a landowner for losses resulting therefrom. *See City of College Station v. Turtle Rock Corp.,* 680 S.W.2d 802, 804 (Tex.1984). The government may enact reasonable legislation to promote the health, safety, and general welfare of its people. *Id.* at 805. The United States Supreme Court has stated, "government regulation— by definition— involves the adjustment of rights for the public good. Often this adjustment curtails some potential for the use or economic exploitation of private property. To require compensation in all such circumstances would effectively compel the government to regulate by *purchase." Andrus v. Allard,* 444 U.S. 51, 65, 100 S.Ct. 318, 62 L.Ed.2d 210, 222 (1979). As Justice Holmes stated in *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 413, 43 S.Ct. 158, 67 L.Ed. 322, 325 (1922): "Government hardly could go on if, to some extent, values incident to property could not be diminished without paying for every such change in the general law. As long recognized, some values are enjoyed under an implied limitation, and must yield to the police power." When a government regulates a right, prohibits some noxious use, or if the public need outweighs the private loss, compensation should not be allowed. *Teague,* 570 S.W.2d at 393.

 We recognize that the instant cause does not involve a claim of inverse condemnation in any capacity. However, at least in theory, if Section 711.041 is ultimately held to be a reasonable exercise of the government's police power, it cannot be constitutionally infirm. In attempting

to determine whether a statute is a proper exercise of police power or involves a taking requiring compensation to the landowner, we recognize at the outset that there is *no* "bright line rule." *See Turtle Rock Corp.,* 680 S.W.2d at 804. In *City of Austin v. Teague,* Justice Pope articulated the problem thusly:

> The labels are not helpful. These two doctrines— police power and eminent domain (compensable taking)— merge at so many places when applied to specific problems, that the legal battlefields have been variously termed a "sophistic Miltonian Serbonian Bog," *Brazos River Authority v. City of Graham,* 163 Tex. 167, 176, 354 S.W.2d 99, 105 (1962); a "crazy-quilt pattern," *San Antonio River Authority v. Garrett Brothers,* 528 S.W.2d 266, 273 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.); "the manifest illusoriness of distinctions," *DuPuy v. City of Waco,* 396 S.W.2d 103, 107 (Tex.1965); producing decisions that are "conflicting, and often … irreconcilable in principle." *Sauer v. City of New York,* 206 U.S. 536, 548, 27 S.Ct. 686, 690, 51 L.Ed. 1176 (1906).

*Id.* at 391. While the question of whether a statute or ordinance is an exercise of police power or whether it constitutes a compensable taking is a question of law and not fact, the reviewing court must nevertheless consider all of the facts and circumstances surrounding each case. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 932–933 (Tex.1998); *Turtle Rock Corp.,* 680 S.W.2d at 804. This appears to be in line with the Texas Supreme Court's ultimate rejection, as observed in *Teague,* 570 S.W.2d at 391–392, of the dichotomy, holding that private property may not be taken without compensation under some circumstances even in the exercise of the police power. We will, therefore, look to the facts of the instant case which led to the trial court's ultimate ruling.

The trial court heard testimony from a number of individuals including both Mr.

and Mrs. Meek, and several members of the Coley Creek Cemetery Association. Most of the facts are not in dispute. One such fact is that the actual cemetery grounds involved are not surrounded by, adjacent to, nor contiguous with the Meeks' property. Mr. Meek testified that he purchased the property in question in October of 1994. He stated that he was aware that Tennessee Gas Transmission Company had three pipeline easements on the property when he purchased it. He further stated that prior to the commencement of the instant lawsuit he was in the process of fencing and clearing the property in order to run his cattle. Mr. Meek provided the following reasons for placing a lock on the gate leading to the gas company's easement effectively locking out appellees whenever they wanted access to the cemetery:

> A. Well, I consider the property as part of my castle, and I don't believe that anybody has the right to come in and out of my property at will. That endangers my other property which may be livestock, endangers whoever is living on the property, and it endangers anyone else who may be walking on the property, plus it makes me assume the liability for anybody entering the property who happens to get hurt, and in today's times, that usually results in a lawsuit.

Testimony from various witnesses on appellees' behalf indicates that the easement in question, although undoubtedly on property presently owned by Mr. and Mrs. Meek, was a logging road at one time and was apparently used as a route to the cemetery. A witness recalled riding in a wagon when she was four years' old, in 1934, to bury her father. The wagon apparently traveled on what is now the easement in order to reach the cemetery. Another witness stated that he remembered visiting the cemetery for the first time "back in the '40's." He further testified that he used the "wagon road" which was the present-day pipeline easement. While

none of appellees' witnesses testified that they ever secured any formal or informal permission from the gas company to use the pipeline easement, they were never forbidden by the gas company from using the easement, either. Finally, appellees witnesses testified that while the gas company erected a gate in front of the entrance of the pipeline easement, said gate was never locked prior to the purchase of the property by Mr. Meek. This fact was contested by Mr. Meek along with appellees' contention that there were no other routes that provided them with access to the cemetery. Appellees did concede that the pipeline easement in question was not a public road.

As we appreciate the totality of the testimony taken on the issue, prior to the purchase of the property in question by Mr. Meek, there existed a "gentlemen's agreement" between the gas company and those seeking access to the cemetery permitting the latter to come and go as they pleased across the pipeline easement. In its judgment, the trial court found appellees to be entitled to access to the cemetery "across certain real property owned by [the Meeks]." Appellees were further permitted by the trial court to "place a separate lock on the gate currently located on [the Meeks'] property." While this would not prevent Mr. Meek from accessing the property, it would potentially allow appellees total freedom to access the property at any time they wish. Although the judgment provided for what might be termed "reasonable restrictions" regarding appellees' access to Mr. Meek's property, there is no indication that Mr. Meek is to be reasonably compensated in exchange for said access. As sole authority for the terms and conditions set out in its judgment, the trial court cited Section 711.041.

■■■ Based upon the facts and circumstances of the instant case, Texas Health

and Safety Code § 711.041 is unconstitutional as applied [2] to Everitt E. Meek and Donna Raye Meek as it clearly violates Article I, § 17 of the Texas Constitution. Even if it were argued that the trial court's use of Section 711.041 was simply a valid exercise of the state's police powers, under the instant circumstances, the trial court's judgment resulted in a taking of the Meeks' property without just compensation. As has been observed, a "taking" involves either actual physical appropriation or invasion of the property in question, or unreasonable interference with the landowner's right to use and enjoy his property. *See DuPuy v. City of Waco*, 396 S.W.2d at 108–109. We find support for our holding in the case, *Waggoner's Estate v. Gleghorn*, 378 S.W.2d 47 (Tex.1964). *Waggoner's Estate* involved the constitutionality of a statutory scheme which granted to anyone who claimed the right to use land which is wholly or partially surrounded by land of another person the right to an easement over the surrounding land for ingress and egress to and from the surrounded property. *Id.* at 48. In rejecting an argument that the statute in question was a valid exercise of police power, the Court responded:

> It seems clear to us, however, that the permanent appropriation of an easement for a right of way for travel across a tract of land constitutes a "taking" within the purview of Article 1, Section 17, of the Constitution. In our opinion Article 1377b is unconstitutional and void to the extent that it purports to authorize the taking of private property for a private purpose.

*Id.* at 50. Regardless whether the "taking" was for a private purpose, as in *Waggoner's Estate*, or for a public purpose, as is apparent in the instant case, the gravamen of the statutes' infirmity, in both instances, is the fact that each one resulted

---

**2.** This type of challenge involves the contention that the statute in question, though generally constitutional, operates unconstitutionally as to the challenging party because of said party's particular circumstances. *See Texas Workers' Compensation Com'n v. Garcia*, 893 S.W.2d 504, 518 (Tex.1995).

in a governmental "taking" of private property without compensation to the owner. Because the trial court's judgment in the instant case was based solely on the authority of Section 711.041, the various restrictions, limitations, and other "takings" set out in said judgment result in Section 711.041 of the Texas Health and Safety Code being unconstitutional as applied to the Meeks. The trial court's judgment, therefore, must be reversed and the cause remanded to said court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.