ACCEPTED
15-24-00120-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
3/20/2025 4:24 PM
CHRISTOPHER A. PRINE
CLERK



**KEN PAXTON**
ATTORNEY GENERAL OF TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
(512) 936-1700
3/20/2025 4:24:55 PM
CHRISTOPHER A. PRINE
Clerk

BENJAMIN MENDELSON
Assistant Solicitor General

Ben.Mendelson@oag.texas.gov

March 20, 2025

**Via efile**
Christopher A. Prine, Clerk
Texas Court of Appeals for the Fifteenth Judicial District

**Re:** *State of Texas v. Harris County*, No. 15-24-00120-CV

Dear Mr. Prine:

The State writes in response to Harris County's post-submission brief. During oral argument in the above-captioned case, Chief Justice Brister invited a post-submission brief on a question regarding the Declaratory Judgment Act. *See* Oral Argument at 25:10-26:10.[1] The County filed a twelve-page document that spent less than two pages answering that question, Letter at 2-3, and otherwise covered a wide range of uninvited topics such that the County has smuggled yet another surreply into this Court. *See* Letter (Dec. 4, 2024) (listed as "surreply" on the Court's docket). In any event, the State responds.

## I. The Court Should Follow *Yett* and *Hollins*.

Even though *Yett v. Cook*, 281 S.W. 837 (Tex. 1926), expressly states that the Attorney General may bring common law causes of action, the County contends that the Court should disregard both that case and *State v. Hollins*, 620 S.W.3d 400 (Tex. 2020), and instead follow *State ex rel. Downs v. Harney*, 164 S.W.2d 55 (Tex. App.—San Antonio 1942, writ ref'd w.o.m.), and *Garcia v. Laughlin*, 285 S.W.2d 191 (Tex. 1955). The Court should not do so because *Yett* and *Hollins* involve common law causes of action, at issue here, whereas *Harney* and *Garcia* discuss the Attorney General's powers to bring statutory causes of action, a point irrelevant to this case.

---

[1] *Available at* Texas Fifteenth Court of Appeals, *15-24-00120-CV State of Texas v. Harris County, Texas, et al.*, YouTube (Feb. 12, 2025), https://www.youtube.com/watch?v=OcRKOif-cC8.

*Yett* began when a private plaintiff sought a writ of mandamus against certain City of Austin officials to compel them to call an election. 281 S.W. at 838. After holding that the plaintiff could not bring the suit, the Court explained that the Attorney General could. It noted that the "rule is an elementary one that the state may maintain an action to prevent an abuse of power by public officers, and in general protect the interest of the people at large in matters in which they cannot act for themselves." *Id.* at 842. "Under the common law, by which our Constitution and statutes are to be interpreted, the state could forfeit municipal charters for misconduct of their officers" and "the less destructive remedies of mandamus and proceedings in equity are more generally employed." *Id.* at 843. "[U]nder the ancient and modern rules of the common law," the State "has sufficient interest to, and can, maintain" common law actions. *Id.* Because "the state can bring a mandamus suit"—that is, a proceeding in equity—"it is elementary that the Attorney General has the power to institute such an action." *Id.*

The County believes that these statements regarding the Attorney General are incorrect dicta and should be disregarded. That is wrong for several reasons. First, assuming that these statements are dicta, lower courts cannot lightly disregard dicta of the Supreme Court. While a lower court can more easily disregard its own dicta, dicta of "the Supreme Court are, of course, another matter." *United States v. Becton*, 632 F.2d 1294, 1296 n.3 (5th Cir. 1980). "There is dicta, and then there is dicta, and then there is Supreme Court dicta." *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) (Carnes, J.). In other words, whether the Supreme Court should follow its own dicta, or whether lower courts should follow their own dicta, is a separate inquiry from whether a lower court should follow the dicta of the Supreme Court. In any event, the Texas Supreme Court has recognized two types of dicta, obiter dictum, which is "not binding as precedent" and judicial dicta, a "statement made deliberately after careful consideration and for future guidance in the conduct of litigation." *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 399 (Tex. 2016). The latter is "at least persuasive and should be followed unless found to be erroneous." *Id.*

*Yett*'s pronouncement that the Attorney General may bring common law causes of action is at least judicial dicta. That statement forms the conclusion of an eight-paragraph discussion as to who could have brought the type of lawsuit at issue. *Yett*, 281 S.W. at 842-43. It explains why "the people of the city are not without remedy" even though the private plaintiff could not bring the suit. *Id.* at 842. That is why the County's suggestion that the Court should classify the conclusion of that discussion

in isolation as obiter dictum is wrong. *Contra* Letter at 6. Further, *Yett*'s statement that the Attorney General may bring proceedings in equity cited seven cases and three treatises. That the County may disagree with those sources or believe them to be inapposite, *see* Letter at 7, does not change the fact that both the Court's statement and the eight-paragraph discussion preceding it are collectively statements "made deliberately after careful consideration" and thus are at least judicial dicta, *Seger*, 503 S.W.3d at 399. Indeed, at argument in this case, Justice Farris called *Yett*'s relevant statements judicial dicta, not obiter dicta, and noted that this Court must follow them unless they are clearly erroneous. Oral Argument at 18:10-18:35.

The County next contends that *Yett* is wrong because it failed to discuss what the County calls "relevant Supreme Court precedent," which, in the County's view, indicate that the Attorney General cannot bring common law causes of action. Letter at 7. That the Supreme Court did not discuss the cases that the County finds relevant should dispose of this argument. More importantly, "if a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, a [lower court] should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Sheffield Dev. Co., Inc. v. City of Glenn Heights*, 140 S.W.3d 660, 674 (Tex. 2004) (alterations in original). Because *Yett* squarely states that the Attorney General may bring common law causes of action, the Court should follow that decision, regardless of whether the County believes that a different line of previously-decided cases may suggest that *Yett* is incorrect. *See* Letter at 7 n.6.

The County also buries the cases it believes *Yett* should have discussed in a footnote because they are inapposite. *See* Letter at 7 n.6. As the County has previously argued, the proposition for which the County cites *State v. Moore*, 57 Tex. 307 (Tex. 1882)—that county attorneys have the exclusive authority to represent the State in district courts—was overruled by *Brady v. Brooks*, 89 S.W. 1052, 1054 (Tex. 1905); Appellee Br. 19. *Brady* itself is similarly inapposite. It held that the Constitution "did not deprive the Legislature of the authority to empower the Attorney General to bring suits on behalf of the state." 89 S.W. at 1055. It then concluded by explaining that the Legislature has the "power to create causes of action in favor of the state, and to make it the exclusive duty to prosecute such suits." *Id.* at 1057. Those holdings say nothing about whether the Attorney General may bring preexisting common law causes of action like any other litigant. *Brady* did not

involve a common law cause of action in any event—only a statutory cause of action to recover taxes and penalties. *Id.* at 1053. *Day Land & Cattle* expressly did not decide whether the Attorney General could bring common law causes of action because the Legislature passed a statute ratifying his decision to bring the suit at issue while the case was pending. *Day Land & Cattle Co. v. State*, 4 S.W. 865, 867 (Tex. 1887). Finally, *Maud v. Terrell*, 200 S.W. 375, 375-376 (Tex. 1918), held that the powers of the Attorney General and county attorneys to represent the State are "exclusive" in the sense that the Legislature may not confer their powers to represent the State to others. *Contra* Letter at 7 n.6. At issue was a constitutional challenge to a statute that permitted the Comptroller to contract with private individuals to collect inheritance taxes. *Maud*, 200 S.W. at 375. That statute was challenged on the ground that it unconstitutionally gave private persons, not the county attorney or the Attorney General, the power to prosecute suits for the collection of those taxes. *Id.* at 376. It was in that context that the Supreme Court held that the powers conferred on county attorneys and the Attorney General are "exclusive" and that the "Legislature cannot devolve them upon others." *Id.* That holding is irrelevant to this case.

The County also contends that *Yett* cited inapposite cases to support its conclusion that the Attorney General may bring common law causes of action. That is wrong too. The first case that *Yett* cited for that proposition squarely held, as an alternative holding, that the Attorney General may bring certain types of common law actions regardless of any statute specifically authorizing him to do so. *Yett*, 281 S.W. at 843 (citing *Queen Ins. Co. v. State*, 22 S.W. 1048, 1052 (Tex. Civ. App. 1893), *rev'd on other grounds*, 24 S.W. 397 (Tex. 1893)). In *Queen*, the Attorney General, representing the State, brought an action against various insurance companies. *Queen*, 22 S.W. at 1049. The appellee argued that "the attorney general did not have the power to maintain the suit in the absence of a statute authorizing it." *Id.* at 1052. The court first held that a constitutional provision authorized the Attorney General to bring the suit. *Id.* But it also alternatively held that it "is an inherent function of his office to protect the public through the courts when they are injured, and have a cause of action." *Id.* "When there is a statute directing him, giving a legal remedy, he must be guided by it, but if there be none the public are not for that reason deprived of the right to resort to judicial proceedings for protection against wrong." *Id.* Where "the public are injured the state must sue to redress the wrong by her attorney general, whether there be a statute to that effect or not." *Id.* That alternative holding was neither "tethered" to the Attorney General's express constitutional powers nor "dictum." *Contra* Letter at 7. Indeed, the Texas Supreme Court's

citation to *Queen* in *Yett* shows that the Supreme Court did not view *Queen* as standing for the simple proposition that a constitutional provision authorized the Attorney General to bring the suit at issue. *See Yett*, 281 S.W. at 843. And even if the relevant passage in *Queen* were dicta, it is squarely on point, and the Texas Supreme Court is entitled to adopt the reasoning of other courts as its own, whether the cited source spoke in dicta or not.

In sum, Harris County's invitation to grade a Texas Supreme Court opinion is bold. But even if the Court accepts that invitation, doing so only supports the State.

## II.     *Harney* and *Garcia* Are Inapposite.

The County next asks this Court to disregard *Yett* and *Hollins* in favor of *Harney* and *Garcia*. It argues that *Yett* is no longer good law, suggesting it has been overruled sub silentio, and largely ignores *Hollins*. In doing so, it violates at least two basic rules. First, a lower court is "obliged to harmonize controlling, superior authority wherever doing so is feasible," not manufacture conflict among Supreme Court decisions. *Carruth v. Henderson*, 606 S.W.3d 917, 926 n.8 (Tex. App.—Dallas 2020, no pet.) (Schenck, J.). Second, as discussed above, "if a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [a lower court] should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Sheffield*, 140 S.W.3d at 674 (alterations in original). *Yett* and *Hollins* (and *Queen*) are easily reconciled with *Harney* and *Garcia*. This Court should not hold that the Supreme Court has overruled its own decisions sub silentio when a plausible reading suggests otherwise.

*Harney* and *Garcia* stand for the proposition that when the Constitution or the Legislature create a cause of action, they generally decide whether the Attorney General may bring it. By contrast, *Yett* and *Hollins* show that the Attorney General may bring common law causes of action like any other litigant, absent a clear statement repealing the common law. This reading harmonizes rather than manufactures conflict among Supreme Court decisions.

*Garcia* and *Harney* both arose when the Attorney General brought suits to remove certain county officials from office using constitutionally and statutorily created causes of action. *Garcia*, 285 S.W.2d at 192-95; *Harney*, 164 S.W.2d at 56-57. *Garcia* favorably discussed *Harney* and held that because "there is no constitutional or

statutory provision which vests in the Attorney General the power, or makes it his duty, to institute actions for the removal of county officers under [the relevant statutory and constitutional provisions], the Attorney General cannot assert or exercise such power and duty in this action." *Garcia*, 285 S.W.2d at 266 (quoting *Harney*, 164 S.W.2d at 58). That conclusion comports with *Yett*, *Queen*, and *Hollins*. *Yett* explained that under the "ancient and modern rules of the common law" the Attorney General may bring common law causes of action. *Yett*, 281 S.W. at 843. *Queen* also held that the Attorney General may represent the State by bringing common law causes of action. 22 S.W. at 1052. Indeed, *Hollins* involved that exact situation. There, the State, represented by the Attorney General, brought a common law ultra vires suit against Harris County officials for violating certain Election Code provisions. *Hollins*, 620 S.W.3d at 405. The Texas Supreme Court held that the State "has an intrinsic right to . . . enforce its own laws," *id*. at 410, and that the "'rule is an elementary one that the state may maintain an action to prevent abuse of power by public officers,'" *id*. at 405 (quoting *Yett*, 281 S.W. at 842).

Thus, a clear rule emerges. When the Constitution or the Legislature create causes of action, they decide who may bring those causes of action—which generally means that if the Attorney General is to bring a constitutional or statutory cause of action, the Constitution or statutes must empower him to do so. But the Attorney General may also bring common law causes of action absent clear repudiation of the common law. That is because the Constitution was not written on a blank slate. The Texas Supreme Court "construe[s] statutory language against the backdrop of common law, assuming the Legislature is familiar with common-law traditions and principles." *Marino v. Lenoir*, 526 S.W.3d 403, 409 (Tex. 2017). Because the State adopted the common law, courts "follow an 'opt-out' approach that incorporates common-law principles absent the Legislature's clear repudiation." *Taylor v. Tolbert*, 644 S.W.3d 637, 650 (Tex. 2022). Courts do not follow an "opt into" approach that requires the Legislature to enact every part of the common law. *Id*. "This principle applies to all positive law—not just statutes, but constitutional texts, too." *Am. Nat'l Ins. Co. v. Arce*, 672 S.W.3d 347, 365 (Tex. 2023) (Young, J., concurring). Given "this State's rich common-law history, law is seldom written on a blank slate." *Id*. (citation omitted). In other words, to determine the Attorney General's powers, constitutional and statutory interpretation begins from the premise that the Attorney General has common law rights, and the Court must ascertain whether the Constitution or the Legislature have clearly repudiated them. When viewed against this common law backdrop, *Harney* and *Garcia* do not

contradict *Yett, Queen*, or *Hollins*. And *Harney* and *Garcia* do not apply to this case because they do not involve common law causes of action.

For these reasons, the two alleged principles that the County draws from *Harney* and *Garcia* are wrong. *See* Letter at 9-10. The Constitution did not *fully* exclude the Attorney General from representing the State in district courts, nor does the Attorney General possess only the powers expressly stated in the Constitution and statutes. *Id. Garcia* held that the "powers conferred by the Constitution upon the state officials are *generally* held to be exclusive, and except in the manner authorized by the Constitution, these powers cannot be enlarged or restricted." 285 S.W.2d at 194 (emphasis added). The word "generally" leaves room for cases like *Yett* and *Hollins*, which are about common law causes of action. And it also contemplates the important principle that the Constitution was adopted against a common law backdrop such that the Legislature must opt out of, not opt into, common law principles. That is particularly true in the case of the Office of the Attorney General, which is "of ancient origin," was historically vested with "substantial power, discretion, and exceptional privileges," preexisted statehood, and was incorporated into the Constitution. *Webster v. Comm'n for Law. Discipline*, 704 S.W.3d 478, 495 (Tex. 2024). It is also irrelevant that the powers of the Attorney General "are prescribed by the Constitution and Statutes" such that those powers "may not be enlarged by the courts." *Garcia*, 285 S.W.2d at 194. The Attorney General is not asking this Court to enlarge his authority. He has the preexisting common law right to bring ultra vires suits, just like any other litigant, because the Legislature follows an "opt out" approach to the common law and has not taken that common law cause of action away from him. *Taylor*, 644 S.W.3d at 650.

The County's arguments regarding *Harney* and *Garcia* are also internally inconsistent. The County asserts that the "conclusions" of *Harney* and *Garcia* have "prevailed" over *Yett*, Letter at 9, while simultaneously asserting that the "only case" that addresses *Yett*, *Harney*, and *Garcia* is a single case from an intermediate court of appeals. Letter at 8 (citing *Hill v. Lower Colo. River Auth.*, 568 S.W.2d 473 (Tex. App.—Austin 1978, writ ref'd n.r.e.)). As explained above, no conflict exists between *Yett* and *Hollins* on the one hand and *Harney* and *Garcia* on the other because the former involve common law causes of action, the latter involve statutory ones, and this Court must read Supreme Court cases in harmony, not manufacture conflict as the County invites. Nonetheless, *Hill* is at best inapposite and at most wrong. Its holding that the "attorney general derives his power and authority in

office from the Constitution and laws of the state duly enacted by the Legislature," 568 S.W.2d at 480, simply means that the Attorney General generally needs a statute authorizing him to bring a statutorily created cause of action like the one in that case, *id*. at 474. But to the extent *Hill* suggests that the Attorney General has no common law rights, it is wrong, both for the reasons explained above, and because it was decided decades before *Hollins*.[2]

Finally, whatever else may be true, *Hollins* controls this case. *Hollins* squarely held—in a case in which the Attorney General brought a common law ultra vires action representing the State against Harris County officials—that the State "has an intrinsic right to . . . enforce its own laws." 620 S.W.3d at 410. It further held that the "rule is an elementary one that the state may maintain an action to prevent abuse of power by public officers." *Id*. at 405 (quoting *Yett*, 281 S.W. at 842). The County asks this Court to reduce *Hollins* to a nullity. If the Attorney General has no common law rights, then *Hollins*'s holdings that "ultra vires conduct automatically results in harm to the sovereign as a matter of law" and that "the State has an intrinsic right to . . . enforce its own laws," 620 S.W.3d at 410, would mean that county attorneys are supposed to sue their own clients, such as the Harris County official in *Hollins*, *id*. at 405. It cannot be that the Supreme Court held that the "State" had the right to enforce its own laws through the ultra vires cause of action only to discover that no state official could do so. A lower court should not ascribe such a tortured reading to a Supreme Court opinion.

---

[2] The County continues to suggest that the Attorney General's position in this case is inconsistent with a brief he filed in *Paxton v. Longoria*, No. 22-0224 (Tex. 2022). The Attorney General has previously explained why that is not true. *See* Reply Br.11-12. After arguing that he could not enforce civil penalties in a statutorily created cause of action in the Election Code, the Attorney General explained that he could still "enforce Texas election laws by other means" because the election statute at issue "preserved pre-existing remedies," including "in the context of . . . *Hollins*, which allowed the Attorney General to use an ultra vires action to rein in election officials who intended to violate the law." Br. for Appellant Att'y Gen. of Texas at 42-43, *Longoria*, No. 22-0224, (Tex. Apr. 7, 2022). The County's repeated invocation of the *Longoria* brief shows only desperation. The Attorney General did not argue in 2022 that he could not have brought *Hollins* in 2020.

### III. The County's Arguments Regarding Program Payments Miss the Point.

The County contends that a statute gives it the authority to bring breach of contract actions to enforce its contracts with Program participants. Letter at 11. That misses the point for two reasons. First, regardless of whether the County has positive law to bring breach of contract actions, the County believes that it has common law rights to bring ultra vires suits *in the name of the County*, not the State, but that the Attorney General cannot bring the same suits absent a statute. That cannot be. Second, even if the County can bring breach of contract actions for Program payments, it has no way of knowing whether it will need to do so in the first instance.

Counties are "mere political subdivisions of the State[,] created for the convenience of the people." *Bexar County v. Linden*, 220 S.W. 761, 761 (Tex. 1920). For this reason, counties "represent no sovereignty distinct from the state and possess only such powers and privileges as have been expressly or impliedly conferred upon them." *Hollins*, 620 S.W.3d at 406. Accordingly, although counties "may exercise broad discretion in conducting county business, the legal basis for any action taken must be grounded ultimately in the constitution or statutes." *Guynes v. Galveston County*, 861 S.W.2d 861, 863 (Tex. 1993); *see Pecos Cnty. Appraisal Dist. v. Iraan-Sheffield ISD*, 672 S.W.3d 401, 406-07 (Tex. 2023). In recent years, Harris County has brought common law ultra vires suits against state officials. *See, e.g., Abbott v. Harris County*, 672 S.W.3d 1 (Tex. 2023) (Harris County sued Governor regarding COVID-19 mask mandates); Respondents' Brief on the Merits, *Abbott v. Harris County*, No. 22-0124, 2022 WL 17082387, at **xii, xiii, 14-15 (repeatedly characterizing the mask mandate case as an ultra vires suit). In doing so, the County did not represent "the State," but represented the County itself, such that its constitutional authority to represent "the State" was irrelevant. *See* Tex. Const. art. V., § 21. So, the County's position is that counties need no statute to bring common law ultra vires suits against state officials, but that the Attorney General needs a statute to bring the same suits against counties. In other words, the County believes that it has more common law rights than the Attorney General even though it is a mere subdivision of the State. That result shows why the County did not make this argument in previous cases, such as the related Uplift Harris case now pending before this Court. *See State v. Harris County*, No. 15-24-00061-CV.

The County's assertion that it can bring breach of contract actions also misses the point because the County has no way of knowing whether it will need to sue someone for breach of contract in the first instance. The County intends to restrict Program purchases by using merchant category codes such that the Program's debit cards will work only at vendors with approved codes. 2.RR.82-83; 5.RR.111. But the County's approved merchant category codes are written at such a high level of generality that they are effectively meaningless controls. They include "discount stores" "department stores" "variety stores" "service stations," and "drug stores and pharmacies." 6.RR.11-13. That includes Walmart, CVS, Walgreens, and any gas station. Thus, restricting purchases on a debit card to these approved merchant category codes prevents no one from purchasing alcohol, tobacco, or gambling products. Further, as the State explained at oral argument, the County has no procedures in place to audit the purchases of program recipients and has testified that it will not monitor individual purchases, so it will not know whether it needs to sue anyone for breach of contract, whether after the first payment or the last. *See* Oral Argument at 8:57-12:10; 2.RR.67 (County's witness testifying that it will not monitor individual purchases made at approved merchants); 2.RR.82 (County's witness testifying that "there's still more planning to do in terms of identifying the specific mechanisms in which somebody is removed from the program"); 2.RR.93 (County's witness testifying that he did not know what documents to request from Program participants to determine if purchases were permissible).

### IV. The Court Need Not Address the County's Remaining Arguments.

Harris County also makes three further arguments that the Court need not address because they do not alter the outcome of the case. *First*, whether the trial court had the power to amend its judgment and strike pleadings is ultimately immaterial to this appeal. The County argued both in its plea to the jurisdiction and in its Rule 12 motion that the Attorney General could not bring this suit. CR.115, 489. The Attorney General appealed the rulings on both motions, CR.478; Appellant's Rule 27.3 Notice at 1-2, and both were superseded pending appeal, Appellant's Rule 27.3 Notice at 2. So, the issue of the Attorney General's authority to bring this suit is before the Court regardless of vehicle. *Second*, the Attorney General has not contended that the Declaratory Judgment Act gives him the authority to bring this case and does not believe the Court need reach that issue because it may follow *Hollins*, *Yett,* and *Queen* to determine that the Attorney General may bring this suit. *Third*, although the statute adopting the common law

supports the Attorney General's position, the Court need not address it to decide this case. That is because *Yett*, *Queen,* and, most importantly, *Hollins* collectively show that the common law both created the ultra vires action and gave the Attorney General the authority to bring ultra vires suits. *Contra* Letter at 4.

Respectfully submitted.

/s/Benjamin Wallace Mendelson

Benjamin Wallace Mendelson
Assistant Solicitor General

cc: all registered counsel (via efile)

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Toni Shah on behalf of Ben Mendelson
Bar No. 24106297
toni.shah@oag.texas.gov
Envelope ID: 98709838
Filing Code Description: Letter
Filing Description: Uplift Harris 2 Post Submission Ltr
Status as of 3/20/2025 4:39 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|-------------------|--------|
| Delonda Dean | | ddean@yettercoleman.com | 3/20/2025 4:24:55 PM | SENT |
| Yetter Coleman | | efile@yettercoleman.com | 3/20/2025 4:24:55 PM | SENT |
| Edward Swidriski | 24083929 | Edward.Swidriski@harriscountytx.gov | 3/20/2025 4:24:55 PM | SENT |
| Toni Shah | | toni.shah@oag.texas.gov | 3/20/2025 4:24:55 PM | SENT |
| Athena Leyton | | athena.leyton@oag.texas.gov | 3/20/2025 4:24:55 PM | SENT |
| Grant Martinez | | gmartinez@yettercoleman.com | 3/20/2025 4:24:55 PM | SENT |
| Lily Hann | | lhann@yettercoleman.com | 3/20/2025 4:24:55 PM | SENT |

Associated Case Party: Harris County, Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|-------------------|--------|
| Christopher Garza | 24078543 | christopher.garza@harriscountytx.gov | 3/20/2025 4:24:55 PM | SENT |
| Jonathan Fombonne | 24102702 | jonathan.fombonne@harriscountytx.gov | 3/20/2025 4:24:55 PM | SENT |
| Eleanor Matheson | 24131490 | Eleanor.matheson@harriscountytx.gov | 3/20/2025 4:24:55 PM | SENT |
| Christian Menefee | 24088049 | christian.menefee@harriscountytx.gov | 3/20/2025 4:24:55 PM | SENT |
| Ryan Cooper | 24123649 | Ryan.Cooper@harriscountytx.gov | 3/20/2025 4:24:55 PM | SENT |
| Andrea Mintzer | | Andrea.Mintzer@harriscountytx.gov | 3/20/2025 4:24:55 PM | SENT |

Associated Case Party: The State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|-------------------|--------|
| Nicole A.Myette | | nicole.myette@oag.texas.gov | 3/20/2025 4:24:55 PM | SENT |
| Ben Mendelson | | Ben.Mendelson@oag.texas.gov | 3/20/2025 4:24:55 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Toni Shah on behalf of Ben Mendelson
Bar No. 24106297
toni.shah@oag.texas.gov
Envelope ID: 98709838
Filing Code Description: Letter
Filing Description: Uplift Harris 2 Post Submission Ltr
Status as of 3/20/2025 4:39 PM CST

Associated Case Party: The State of Texas

| Ben Mendelson | | Ben.Mendelson@oag.texas.gov | 3/20/2025 4:24:55 PM | SENT |
|---|---|---|---|---|
| William Farrell | | biff.farrell@oag.texas.gov | 3/20/2025 4:24:55 PM | SENT |